**SHEPARD ENGINEERING COMPANY,**
Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 16551.

United States Court of Appeals
Eighth Circuit.

March 16, 1961.

Rehearing Denied May 17, 1961.
See 289 F.2d 681.

Robert H. Batts, St. Louis, Mo., for appellant. Milton Yawitz, Rassieur, Long & Yawitz, St. Louis, Mo., were with him on the brief.

W. Francis Murrell, Asst. U. S. Atty., St. Louis, Mo., for appellee. William H. Webster, U. S. Atty., St. Louis, Mo., was with him on the brief.

Before WOODROUGH, VAN OOS-TERHOUT and MATTHES, Circuit Judges.

WOODROUGH, Circuit Judge.

This appeal is from a money judgment in favor of the United States as plaintiff, entered after full hearing upon plaintiff's motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. supported by evidence and admissions in the record. The Court embodied its decision in a memorandum which has not been published as follows:

"The United States of America, hereinafter referred to as plaintiff, brought suit against Shepard Engineering Company, a Missouri corporation, with principal place of business at St. Louis, Missouri, hereinafter referred to as defendant, and William H. Banks Warehouses, Inc., an Illinois corporation, hereinafter referred to as Banks. Plaintiff in Count

1 of its Amended Complaint seeks to replevin certain aluminum circles it alleged to be in the possession of the defendants. In Count 2 plaintiff sought judgment against defendant Shepard Engineering Company alone, for damages for conversion of certain aluminum circles. By stipulation the cause was dismissed as to defendant Banks. Various pre-trial conferences were had, requests for admissions were made, agreements and stipulations were made for the supplying of the record with various contracts and exhibits and the cause is now before the Court upon plaintiff's Motion for Summary Judgment against defendant supported by the evidence and admissions in the record.

"The aluminum circles which were replevied under Count 1 of plaintiff's Complaint were sold, by agreement, for the sum of $1,737.12, which amount was deposited and is in the Registry of the Court. There was further stipulation and agreement by plaintiff and defendant that, in the event the issues are found for the plaintiff upon the Motion for Summary Judgment, plaintiff and defendant would either enter into a stipulation as to the value of the remaining aluminum circles in controversy or would offer proof thereon, in the event of disagreement, so that the Court could enter a complete and final judgment for a definite amount to be determined upon Count 2 of the Complaint.

"The facts and admissions in evidence, which the Court will hereinafter set forth, shall constitute the finding of facts herein and are as follows:

"On June 26, 1953, plaintiff contracted with Diamond Building Products Corporation, an Ohio corporation, hereinafter referred to as Diamond, for the production of aluminum napalm bombs under Contract No. DA30–070–CML–414. The contract * * * embraced the provisions of U. S. Standard Form No. 32, found in Title 41 U.S.C.A.Appendix, Sec. 54.21.

"On June 1, 1954, Diamond entered into a contract with defendant for the production of components of such bombs and in which Diamond agreed to furnish the materials used in the manufacturing of 'nose caps' and 'tail cones' for said bombs.

"The contract between plaintiff and Diamond shall hereinafter be referred to as the prime contract. The contract between Diamond and defendant shall hereinafter be referred to as the sub-contract. The prime contract provided for sub-contracts and sub-contracts agreed to be subject to the terms and agreements of the prime contract.

"On or about October 1, 1954, plaintiff and Diamond amended the prime contract by Supplemental Agreement No. 10, referred to as General Provisions 36, which amendment among other things, provided as follows:

'(b) Upon the making of any partial payment under this contract, title to all parts, materials, inventories, work in process and non-durable tools * * * shall forthwith vest in the government; and title to all like property thereafter acquired or produced * * * shall vest in the government forthwith upon said acquisition or production; * * *.' 1

1. The entire provisions under 36(a) and 36(b) reads as follows:

"(a) The contracting Officer may, from time to time, authorize partial payments to the Contractor upon property acquired or produced by it for the performance of this contract: Provided, that such partial payments shall not exceed 90 percent of the direct labor and direct material costs to the Contractor of the property upon which payment is made, which cost shall be determined from evidence submitted by the Contractor and which must be such as is satisfactory to the Contracting Officer: provided further, that in no event shall the total of unliquidated partial payment * * * and of unliquidated partial payments, if any, made under this contract exceed 80 percent of the total contract price of supplies still to be delivered.

"(b) Upon the making of any partial payment under this contract, title to all parts, materials, inventories, work in

"Diamond placed various orders for aluminum circles with Kaiser Aluminum Company and directed shipment thereof to defendant as per Diamond's agreement with defendant. Defendant contracted with Banks for warehouse facilities for the storage of the aluminum circles in question and Banks issued its warehouse receipts and received and stored the shipments in field warehouses upon the premises of defendant after October 6, 1954.

"At a pre-trial conference on October 16, [1959, sic], it was agreed between the parties that plaintiff made its first partial payment to Diamond on October 6, 1954.

"The partial or total amounts plaintiff paid Diamond, or the amount that Diamond may owe defendant, are not material to the issues of this cause. For, it is sufficient to constitute consideration, when plaintiff made any partial payment under the terms and conditions of the amendment to the prime contract and prior to Diamond's receipt of possession of the aluminum circles, and such, this record discloses, were the facts.

"On October 20, 1955, Diamond was adjudicated a bankrupt by the United States District Court for the Northern District, Eastern Division, of Ohio, and its business was discontinued. A trustee was appointed who took charge of the assets of Diamond and plaintiff filed a reclamation petition. The trustee's petition to sell the aluminum circles in question was dismissed by the Court and subsequent to that this suit was instituted by plaintiff.

"The findings have heretofore disclosed the replevin of certain of the aluminum circles, which were sold by agreement and the proceeds deposited in the Registry of the Court; this pertains to Count 1 of plaintiff's Complaint. The remainder of the aluminum circles, the subject matter of Count 2 of plaintiff's Complaint, had been sold and the proceeds converted by defendant.

"Conclusion.

"It is this Court's conclusion that with the Motion and supporting evidence before it, the issues as to title of the aluminum circles in question can be determined and that the amount due upon Count 2 of the Complaint can be left to subsequent stipulation or determination.

"It is this Court's further conclusion that plaintiff, by its partial payments, had title to the aluminum circles directed by Diamond to be shipped to defendant, which aluminum circles came into possession of defendant under the terms of its sub-contract with Diamond.

"It is this Court's further conclusion that defendant had no rights herein paramount to those rights had by Diamond under the terms of the prime contract; and that the amendment of the contract between Diamond and plaintiff determined the fixing of title to the aluminum circles in question, irregardless of and paramount to any sub-contract agreement between Diamond and defendant.

"It is further the conclusion of this Court that plaintiff's title vested as of the time of its partial payment and continued thereafter throughout all time involved in this litigation; that defendant's possession of the aluminum circles in question was possession only and cannot defeat plaintiff's title; that defendant's sale and conversion of the proceeds of some of the aluminum circles in question entitles plaintiff to an accounting and adjudication of the fair market value thereof.

---

process and nondurable tools theretofore required or produced by the Contractor for the performance of this contract, and properly chargeable thereto under sound accounting practice, shall forthwith vest in the Government; and title to all like property thereafter acquired or produced by the Contractor for the performance of this contract and properly chargeable thereto as aforesaid shall vest in the Government forthwith upon said acquisition or production; Provided, that nothing herein shall deprive the Contractor of any further partial or final payments due or to become due hereunder; or relieve the Contractor or the Government of any of their respective rights or obligations under this contract."

"A judgment shall be entered sustaining plaintiff's Motion for Summary Judgment finding that plaintiff is entitled to the aluminum circles in question and entering judgment upon Count 1 in the amount of $1,737.12, now in the Registry of this Court. The judgment shall further find the issues for plaintiff upon Count 2 finding that plaintiff is entitled to the aluminum circles in question, that same have been converted by defendant and shall enter judgment in an amount stipulated by and between the parties, or if unable to agree, after proof thereon in such amount as found by the Court."

The amount was determined to be $5,663.56 and judgment was entered on each of the two counts accordingly. Concededly no genuine issue of material fact was presented and summary judgment was the proper proceeding for the disposition of the issues of law involved.

On this appeal, it is contended in substance that the conclusions of the District Court were erroneous: 1. That there was no authority in law for the amendment of the prime contract as of October 1, 1954 to include "General Provision No. 36 entitled Partial Payment"; 2. That in any event the "Partial Payments" amendment was not binding on the sub-contractor, Shepard; 3. That the "Partial Payments" provision applied by its terms only to "materials * * * required or produced by the contractor for the performance of this Contract, and properly chargeable thereto under sound accounting practices" and appellant contends the aluminum in question was not so chargeable.

The appellant argues that 10 U.S.C. § 2307 and 41 U.S.C.A. § 255, which are cited by the government as authorizing the "Partial Payments" addition to the prime contract applied and held to be controlling by the District Court, relate by their terms to amendments of "negotiated" contracts with the government and are not applicable to government contracts that have been awarded on bidding. The prime contract here recites that it was awarded to the lowest responsible bidder after invitation for bids had been issued, and appellant's contention here is that there was no law authorizing an amendment of the prime contract. It does not appear to have made the same contention in the District Court and the record discloses no ruling upon it there.

It is manifest from the record that a great many amendments were made to the prime contract and it is stated by the House Committee on Armed Services Procurement Act in House Report No. 109, 80th Congress, 1st Session at page 5 that "Advance payments are authorized for all types of contracts during periods of national emergency, but are restricted to research and development contracts during times of peace."

The following appears in the September 17, 1954 amendment to the prime contract:

"38. Subcontracts (a)

"Because of the nature of the work called for by this Contract and the great uncertainty as to the cost of performance hereunder, the parties agree that the contract price fixed in Schedule DD 351–1 hereof may be increased or decreased in accordance with the provision of this clause."

The prime contract is not included in the record in its entirety. The critical amendments, General Provisions 36(a) and 36(b), are shown to have been included in an amendatory Article of the contract number II, along with XI other amendatory Articles in what is numbered as the tenth revision of the prime contract agreed to between the prime contractor, Diamond, and the Government. The correspondence in evidence indicates that Shepard also agreed with Diamond upon alterations and changes in its work. In view of the record here presented, we do not find error in the Court's ruling that the prime contract was effectually amended by the parties to it by the inclusion of the partial payment provisions.

Following the inclusion of the provision in the prime contract on October 1, 1954, the Government paid Diamond

a percentage of the cost Diamond incurred in the purchase of aluminum from Kaiser Aluminum Company acquired for the performance of the contract and commencing October 6, 1954, the Government continued to make partial payments for material acquired for performance of the contract to Diamond until Diamond's bankruptcy. At the time of the bankruptcy, the aluminum which is the subject matter of this action remained in a bonded field warehouse on the premises of Shepard. The agreement establishing the field warehouse was dated the 25th of October, 1954, and the warehouse receipts for aluminum are dated March 29, 1955, and April 5, 1955. The property on account of which recovery was awarded to the Government was acquired by Diamond for the performance of the work after Diamond had received partial payments from the Government under the partial payment amendment to the prime contract and it was thereafter delivered to Shepard and stored in the field warehouse on Shepard's premises.[2]

Under the express terms of the amendment to the prime contract, the aluminum in controversy ("material * * * required by the contractor for the performance of this contract") forthwith vested in the Government. There is no ambiguity in the words of the contract that the material "shall forthwith vest in the Government" and there is no reason why the contract should not be enforced by the courts.

■ Appellant claims that it was an "innocent purchaser of the aluminum for value without notice" and that the title to the aluminum never vested in the Government, but it is not claimed that it had any title to the aluminum except such as it obtained from Diamond. Diamond obtained such control of the aluminum as it had by ordering it from the Kaiser Aluminum Company for performance of the government contract and the Government became vested with title by the express terms of the amendment to the prime contract.

Appellant stresses that in its proposal to Diamond for a sub-contract it stated: "We agree to purchase the material * * from Diamond Building Products * * ", and it contends that subsequent transactions by which the aluminum needed for the sub-contract parts was delivered to Shepard and put into a field warehouse and warehouse receipts issued against it to Shepard, which Shepard transferred to Diamond, constituted a sale and transfer of the title to the aluminum to appellant. But the conclusion of the District Court that the Government's title vested at the time of each purchase subsequent to the first partial payment and continued to vest thereafter as each succeeding purchase was made throughout all time involved in this litigation is in accord with the prime contract. We think it is without error.

■ There is no dispute that the aluminum in question was "required for the performance of the prime contract" and we think it was "properly chargeable thereto under sound accounting practice" within the terms of the amendment to the contract. It is true that if the material had become incorporated in the finished product its cost would not have been separately charged, but would have been a part of the charge for the product,

2. The transactions took place in the following order: the sub-contract was initiated in June of 1954; some shipments of aluminum were made to Shepard prior to October of 1954; on October 1, 1954, the Government and Diamond amended the prime contract to provide for partial payments; the first partial payment was made to Diamond on October 6, 1954; On October 25, 1954, Shepard entered into an agreement to establish a field warehouse for the aluminum; following the first partial payment and prior to February 16, 1955, the aluminum here in controversy was shipped to Shepard; on February 16, 1955, Diamond submitted the aluminum invoices to the Government for payment; on February 18, 1955, the Government made a partial payment to Diamond for the cost of the aluminum; the warehouse receipts were dated March 29, 1955 and April 5, 1955; the bankruptcy occurred in October of 1955.

*if* that had occurred. Upon the bankruptcy of Diamond all work under the contract and subcontract ceased and thereafter the aluminum in controversy had to be separately dealt with upon any accounting.

We agree with the conclusion of the District Court that:

"The partial or total amount plaintiff paid Diamond or the amount that Diamond may owe defendant are not material to the issues of this cause. For it is sufficient to constitute consideration when plaintiff made any partial payment under the terms and conditions of the prime contract and prior to Diamond's receipt of possession of the aluminum circles and such, this record discloses are the facts."

On the whole record, we find no error in the judgment which is accordingly

Affirmed.