414 F.Supp. 1 (1975)
UNITED STATES of America, Plaintiff,
v.
Marshall O. BUDER, Defendant.
No. 74-387 C (1).
United States District Court, E. D. Missouri, E. D.
April 7, 1975.
Donald J. Stohr, U. S. Atty., St. Louis, Mo., for plaintiff.
David C. Godfrey, Albert H. Feldt, Clayton, Mo., for defendant.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
MEREDITH, Chief Judge.
This matter was tried to the Court and the Court makes the following findings of fact:

Findings of Fact
1. On June 29, 1971, the plaintiff through agencies of the Department of the Air Force, contracted with Meyer Labs, Inc., whereby Meyer agreed to supply 4,128 bomb release units (BRU's) for military aircraft at a fixed price of $10,109,472. The contract, which was numbered FO8635-71-C-0117, was temporarily terminated by the Government for default by notice dated October 18, 1972.
2. Subsequently, when the notice of termination was rescinded, the contract was modified as set forth in modification numbered P00007, dated December 15, 1972. Among other things, the contract modification reduced the quantity of BRU's to 2,700; the contract price was reduced to $7,360,646; and a delivery schedule was established which required an initial delivery of 50 BRU's not later than March 15, 1973.
3. When the contractor presented the first 50 units on March 15, 1973, they were declared to be unacceptable to the Government, because they did not conform to the contract specifications.
4. The contract was declared to be in default and thereafter was terminated by the Government in a letter dated April 11, 1973.
5. Thereafter, the contractor pursued administrative appeals, and meetings were held between Louis A. Meyer, president of Meyer Labs, Inc., and Government contracting officers, to discuss the transfer to the Government of materials pursuant to contract and other matters incidental to its termination.
6. In performing under the contract, it was necessary for Meyer Labs to subcontract to the Aluminum Company of America (ALCOA) the fabrication of aluminum extrusions, which Meyer would then fashion into the completed bomb release units.
7. At the time the contract was terminated on April 11, 1973, and during the subsequent discussions between the parties relating to the details of its termination, ALCOA had ready for delivery to the contractor the 170 extrusions which are *2 claimed by the Government. ALCOA, however, refused to deliver the extrusions to Meyer until paid in the amount of $27,672.
8. In November 1973, the Valley Bank of Florissant made a partial payment to ALCOA of $25,465, and later that month the balance due was personally paid by defendant Marshall O. Buder.
9. The extrusions were shipped on January 10, 1974, to defendant c/o Meyer Labs, Inc., as shown on the ALCOA shipping invoice. The invoice further identifies the name and address of Meyer and the contract number, FO8635-71-C-0117.
10. The extrusions were received by the defendant and are presently in his possession at 4210 Duncan Street, St. Louis, Missouri.
11. Defendant Marshall O. Buder was a stockholder and a director of Meyer Labs, Inc. In addition, he funneled substantial financial support to the company through an escrow agreement at the Valley Bank of Florissant, for the purpose of paying costs incurred by Meyer in producing the release units under the contract. The Government was not a party to the escrow agreement.
12. The contract as originally signed, referenced on page one of Section L, Part 3, a default clause contained in Armed Services Procurement Regulation (ASPR) 7-103.11, dated August 1969. Paragraph (d) of the clause provided that if the contract was terminated, in addition to other rights, the Government
"may require the Contractor to transfer title and deliver to the Government, in the manner and to the extent directed by the Contracting Officer, (i) any completed supplies, and (ii) such partially completed supplies and materials, parts, tools, dies, jigs, fixtures, plans, drawings, information, and contract rights (hereinafter called `manufacturing materials') as the Contractor has specifically produced or specifically acquired for the performance of such part of this contract as has been terminated; and the Contractor shall, upon direction of the Contracting Officer, protect and preserve property in the possession of the Contractor in which the Government has an interest."
13. The contract was modified by P00007, dated December 15, 1972. Paragraph D of this contract change references another Regulation titled "Progress Payment for Small Business Concerns", as prescribed in ASPR 7-104.35(b), dated January 1972, which provides in section (d) as follows:
"(d) TITLE. Immediately, upon the date of this contract, title to all parts; materials; inventories; work in process; . . . theretofore acquired or produced by the Contractor and allocated or properly chargeable to this contract under sound and generally accepted accounting principles and practices shall forthwith vest in the Government . ."

Conclusions of Law
1. This Court has jurisdiction pursuant to 28 U.S.C. § 1345.
2. The property is unlawfully detained by the defendant and said property has not been taken by any tax, assessment, or fine levied by virtue of any law of this state against the property of the plaintiff nor seized under any execution or attachment against the goods and chattels of the plaintiff liable to execution or attachment, nor held by virtue of any writ of replevin against the plaintiff.
3. The Government is entitled to possession of 170 extrusions, because title to them was vested in the Government by operation of contract modification P00007, dated December 15, 1972. See Boeing Co. v. United States, 338 F.2d 342, 168 Ct.Cl. 109 (1964), cert. den., 380 U.S. 972, 85 S.Ct. 1331, 14 L.Ed.2d 269 (1965); In re Double H Products Corp., 462 F.2d 52 (3rd Cir. 1972).
4. The actions of the Government contracting officer in discussing matters relating to the contract terminated on April 11, 1973, did not constitute an abandonment of the Government's title pursuant to the contract. The defendant did not acquire title or superior right to possession of the extrusions by operation of the escrow agreement. *3 A judgment will be entered against defendant requiring him to surrender possession of the property. Plaintiff is also entitled to damages, if any, to the 170 extrusions or for the value of any not delivered to the plaintiff and for the costs of this action.