In re ECONOMY CAB AND TOOL CO., INC., Debtor.

UNITED STATES of America, Plaintiff,

v.

ECONOMY CAB AND TOOL CO., INC., Defendant.

Bankruptcy No. 5–84–88.
Adv. No. 5–84–29.

United States Bankruptcy Court,
D. Minnesota,
Fifth Division.

March 15, 1985.

See also 44 B.R. 721.

Mary E. Carlson, Asst. U.S. Atty., Minneapolis, Minn., Richard F. Pier, Trial Atty. Defense Contract Administration Services Region, St. Louis, Mo., for plaintiff/petitioner.

James J. Bang, Duluth, Minn., for defendant/respondent.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER GRANTING SUMMARY JUDGMENT

GREGORY F. KISHEL, Bankruptcy Judge.

The above-captioned matter came on before the undersigned United States Bank-

ruptcy Judge upon the motion of Plaintiff United States of America (hereinafter "Plaintiff") for summary judgment pursuant to F.R.C.P. 56. Plaintiff appeared by Mary E. Carlson, Assistant United States Attorney. Richard F. Pier, trial attorney, Defense Contract Administration, appeared of counsel and on the brief for Plaintiff. Defendant Economy Cab and Tool Co., Inc. (hereinafter "Debtor") appeared by its attorney, James J. Bang. Upon Plaintiff's motion, the various documents filed before and after the hearing by counsel for both parties, the arguments of counsel, and all of the other files and records herein, the Court makes the following Findings of Fact, Conclusions of Law, and Order for Judgment.

## FINDINGS OF FACT

Debtor is a "debtor in possession" under Chapter 11 of the Bankruptcy Code, having filed its Petition for Relief in this Court on March 28, 1984. On August 30, 1982, Debtor and the United States Department of Defense had entered into a fixed-price procurement contract, under the terms of which Debtor was to manufacture 744 aircraft maintenance platforms and deliver them to the United States Army on or before March 23, 1984. For its services, Debtor was to receive total compensation of $642,816.00, to be made in the form of periodic "progress payments". As of February 17, 1984, Debtor had received a total of $578,534.00, in nine progress payments. As of that date, it had purchased materials and inventory of an unspecified value for use in the manufacture of the platforms; it had not completed the manufacture of any of the platforms other than one prototype. On February 17, 1984, Debtor requested payment of a tenth progress payment in the sum of $32,141.00. This progress payment was attributable to certain aluminum extrusion castings and wheels purchased by Debtor (hereinafter referred to as "the materials") and labor costs during the several months prior to the request. Debtor certified in its request that the materials were allocable or properly chargeable to the contract. Plaintiff refused to make this progress payment and it is still unpaid. Debtor has not installed or incorporated the materials into any of the platforms, and they remain discrete and identifiable. Debtor is holding all of the materials, all materials and inventory acquired prior to February 17, 1984, and work in process (partly-completed product) at its Esko, Minnesota plant.

On or about March 28, 1984, Debtor requested the Department of Defense to modify the contract to grant it a larger total payment for performance. Apparently, Debtor's principals had determined that it could not even complete performance of the contract under its original terms, let alone make a profit. Plaintiff refused to modify the contract. At some point thereafter, Debtor ceased all activity on performance of the contract. Plaintiff has taken no formal action in this Court under 11 U.S.C. § 365 on the issue of acceptance or rejection of the contract.[1]

On the question of security and title, the contract between the United States and Debtor provides in pertinent part as follows:

(d) Title ... Immediately, upon the date of this contract, title to all parts; materials; inventories; work in process ... theretofore acquired or produced by the Contractor and allocable or properly chargeable to this contract under sound and generally accepted accounting principles and practices shall forthwith vest in the government; and *title to all like property thereafter acquired or produced by the Contractor* and allocable or properly chargeable to this contract as aforesaid *shall forthwith vest in the Government upon such acquisition, production, or allocation.*

[emphasis added]

All of the materials, inventory, and partly-completed product are free from the se-

---

**1.** At the hearing on the motion for summary judgment, Debtor's counsel advised the Court and Plaintiff's counsel that Debtor considered the contract to have been rejected. Therefore, the Court need not address the issues under 11 U.S.C. §§ 362 and 365 which Plaintiff's counsel had briefed lengthily.

curity interest of any party other than the United States. At no time did the United States file a financing statement under Article 9 of the Uniform Commercial Code, and at no time did Debtor grant the United States a security interest in any of the materials, inventory, or partly-completed product as a security interest is defined under Article 9 of the Uniform Commercial Code.

## CONCLUSIONS OF LAW

■ The sole issue in this case is the construction of certain language in a U.S. Government defense procurement contract relating to the vesting of title in materials acquired by a government contractor for performance of the contract. The parties have agreed, and the Court concludes, that there is no genuine issue as to any material fact and that issue therefore may be determined as a matter of law. F.R.C.P. 56(c).

Plaintiff's Complaint seeks judgment in its favor finding that title had vested to all of the materials, inventory, and "work in process" in Debtor's possession, and that the government is entitled to immediate possession of the property. Debtor's Answer to Plaintiff's Complaint alleges that the contract granted Plaintiff no more than a lien interest in the property and that Plaintiff had failed to perfect this lien interest by appropriate filing under the Uniform Commercial Code, MINN.STAT. 336.-9–101 *et seq.* The Answer then alleged that Plaintiff's interest in the property was subject to Debtor's lien avoidance powers under 11 U.S.C. § 544 and that, therefore, Plaintiff was not entitled to immediate possession of the property.

Plaintiff's motion for summary judgment squarely joined these issues. Under a Pre-Trial Order entered by the Court on December 6, 1984, Debtor's counsel was to serve and file a cross-motion for summary judgment by December 16, 1984. Debtor's counsel failed to do so. He then appeared at the hearing on Plaintiff's motion assert-ing a new defense to Plaintiff's claim to a portion of the property and conceding Plaintiff's claim to the remainder of the property. Debtor's counsel conceded that Plaintiff had title to all of the property attributable to the nine progress payments actually made to Debtor by Plaintiff. He argued that it did not have title to the materials attributable to the requested but unpaid tenth progress payment. His sole reasoning is that Plaintiff had not "paid for" the materials by making the tenth progress payment. Over the objection of counsel for Plaintiff, the Court allowed Debtor's counsel to make this argument and an oral cross-motion for summary judgment thereon.[2]

The ultimate issue in this matter can be simply stated: under the "title-vesting" clause of the contract between Plaintiff and Debtor, when does title to property purchased by Debtor for use in its performance on the contract vest in Plaintiff? Plaintiff argues at some length that, under the contractual language, title to all property acquired by Debtor after the execution of the contract for use in Debtor's performance on the contract vested in Plaintiff as soon as Debtor acquired the property, regardless of whether Plaintiff had made a progress payment attributable to the specific property. Debtor argues that title vested in Plaintiff only after Plaintiff made a progress payment for the specific property in question.

"Title-vesting" language similar or identical to the language involved in the instant case has been the subject of litigation in the federal courts for over a century. *See, e.g., United States v. Ansonia Brass and Copper Co.,* 218 U.S. 452, 31 S.Ct. 49, 54 L.Ed. 1107 (1910); *In Re American Boiler Works, Inc.,* 220 F.2d 319 (3rd Cir.1955); *Shepard Engineering Company v. United States,* 287 F.2d 737 (8th Cir.1961); *United States v. Buder,* 414 F.Supp. 1 (E.D.Mo. 1975), *aff'd,* 538 F.2d 333 (8th Cir.1976); *United States v. Digital Products Corp.,*

---

**2.** Debtor's counsel's failure to comply with the Pre-Trial Order by not timely presenting a written motion for summary judgment is one of the grounds for Plaintiff's separate motion for an Order imposing sanctions against Debtor's counsel, which is under advisement at this time.

624 F.2d 690 (5th Cir.1980); *United States v. American Pouch Foods, Inc.*, 30 B.R. 1015 (N.D.Ill.1983).

The Courts in these cases have almost uniformly held that title to materials, inventory, and work in process vested in the government upon the occurrence of the events specified under the language in each individual contract.[3] The reported cases seemingly have all involved situations where the government has made progress payments attributable to all of the property in the contractor's possession. At the very least, no opinion in any of these cases explicitly stated that the contractor had purchased materials or inventory for which it had not received a progress payment. The instant case may, therefore, be a case of first impression. However, this possibility does not change the Court's conclusion that this was an arms-length transaction and agreement reached between two consenting parties, and that the plain language of the contract governs the rights of the parties. *See, e.g., In Re Double H Products Corp.*, 462 F.2d 52, 55 (3rd Cir.1972); *Shepard Engineering Co. v. United States, supra*, at 741–2; *In Re American Boiler Works*, 220 F.2d at 321. That contractual language fully supports Plaintiff's position. As one of the express conditions for receipt of periodic progress payments during its performance on the contract, Debtor agreed that title to all materials acquired by it for performance on the contract would vest in Plaintiff as soon as Debtor acquired the materials. The vesting of title in Plaintiff was in no way made contingent upon Debtor being "paid for" the materials or being reimbursed for any of its payments to suppliers, via progress payment from Plaintiff. Rather, the vesting of title was part of the comprehensive allocation of rights and duties between the parties to the contract, which must be viewed against a

backdrop of the legislative and administrative structure of the law governing such contracts.[4]

Debtor does not argue that there was no consideration for the contract or that the contract, as a whole, is unenforceable. Neither does it dispute that the materials were "allocable or properly chargeable to [the] contract". Even if Debtor had, the Court would be constrained to find that they were; there is no dispute that Debtor purchased the materials to incorporate into the products which it was to produce for Plaintiff under the contract, and it so certified in its request for the progress payment.

Debtor's citation of *In Re Double H Products Corp., supra*, and *Shepard Engineering Co. v. United States, supra*, are inappropriate. In neither of those cases did the Court explicitly hold that title to particular property vested in the United States only when the contractor received the progress payment attributable to that property. It is true that the Court in *In Re Double H Products Corp.* noted that prior authorities had found vesting of title and ownership "at least to the extent of the partial payments [made]". 462 F.2d at 55. However, a thorough reading of that case suggests that the Court there did not deal with the factual situation involved herein, or it would have expressly addressed this issue.

■ Therefore, the Court concludes that Plaintiff has full title to and ownership of all materials, inventory, and "work in process" allocable or properly chargeable to the procurement contract between Plaintiff and Debtor which Debtor presently holds at its plant, including the aluminum extrusion castings, wheels, and all other materials attributable to the requested but unpaid

---

**3.** In the one reported exception, *Marine Midland Bank v. United States*, 687 F.2d 395, 231 Ct.Cl. 496 (1982), *cert. denied*, 460 U.S. 1037, 103 S.Ct. 1427, 75 L.Ed.2d 788 (1983), the Court of Claims held that a "title-vesting" clause similar to that in this case did not confer full title in the United States, but only the status of lienor. For the reasons exhaustively set forth by the District

Court in *In Re American Pouch Foods, Inc., supra*, at 1017–23, this Court concludes that *Marine Midland* was wrongly decided.

**4.** This law and its historical origins were exhaustively examined by the Court in *In Re American Pouch Foods, Inc., supra*, at 1017–23.

tenth progress payment. Plaintiff is entitled to immediate possession of this property. Debtor's remedy for Plaintiff's failure to pay the tenth progress payment does not appropriately lie in this Court, but rather through the Armed Services contracting administrative appeal process. *Shepard Engineering Co. v. United States, supra,* at 742; *In Re American Pouch Foods, Inc., supra,* at 1023–24.

WHEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:

1. That Plaintiff holds full title and ownership of all personal property listed in § H.1(d) of the contract entered into by Plaintiff and Debtor on August 30, 1982, specifically including the aluminum extrusion castings and wheels acquired by Debtor for which Debtor made a request for Progress Payment Number Ten on February 17, 1984.

2. That Debtor and its officers, employees, and agents are hereby ordered to surrender possession of the property described in Term 1 of this Order to Plaintiff, its employees or agents forthwith upon Plaintiff's request.

3. That, pending surrender of the property described in Term 1 of this Order to Plaintiff, Debtor shall properly store and care for the same, preventing and avoiding all damage thereto or loss thereof.

4. That the issue of costs, expenses and attorney fees is hereby reserved, pending the Court's determination of Plaintiff's motion for the same heard on March 7, 1985.