**In re DENALCO CORPORATION, Debtor.**

**FIRST NATIONAL BANK OF GENEVA, Plaintiff,**

v.

**Trustee John BIALLAS and United States of America, Defendants.**

Bankruptcy Nos. 83 B 5234, 84 A 0040.

United States Bankruptcy Court, N.D. Illinois, E.D.

July 8, 1985.

John Ruddy, Ruddy, Myler, Ruddy & Fabian, Aurora, Ill., for plaintiff.

Anton R. Valukas, U.S. Atty. for N.D. of Ill. by Ann L. Wallace, Asst. U.S. Atty., Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

ROBERT L. EISEN, Bankruptcy Judge.

This matter was heard on cross motions for summary judgment filed by the United

States of America (Government) and First National Bank of Geneva (Bank). The Court having carefully considered the pleadings and memoranda filed herein as well as all documents, exhibits and evidence submitted therewith, does hereby grant the Government's motion for summary judgment and deny the Bank's motion for summary judgment.

## THE FACTS

The debtor, Denalco Corporation, was a manufacturing company located in Geneva, Illinois. On November 21, 1981, Denalco entered into a contract with the Department of the Army to supply the army 4,300 gasoline cylinder heads at a cost of $2,524,-518.00. The contract between the Government and Denalco contained a standard "Progress Payments for Small Business Concerns" provision under which the Government could advance up to 90% of the contract price to Denalco to cover costs incurred by Denalco under the contract before delivery of any goods to the Government. The contract between Denalco and the Government contained a "title-vesting" clause whereby title to all materials, inventories, special tooling, etc., which are chargeable to the contract vested in the Government as soon as it was acquired by Denalco.

The subject of the dispute is one Mazak Micro Center[1] which Denalco purchased from Siegler Machinery Corp. on July 1, 1982 for $143,629.53 in order to produce a sample product under the Government contract.

On July 1, 1982 the Bank loaned Denalco $64,000.00 on a 180 day promissory note secured by the Mazak Micro Center. The $64,000.00 was used to make the final installment payment due the seller of the machine. The Bank filed the appropriate U.C.C. financing statement with the Illinois Secretary of State on July 8, 1982 covering the same Mazak Micro Center (Mazak).

The first payout by the Government under the progress payment clause of the contract was made on December 29, 1981 and was for $400,050.00. The Mazak was listed on Denalco's request to the Government for this progress payment.

On April 25, 1983 Denalco filed a petition under Chapter 11 of the Bankruptcy Code (11 U.S.C. 101 et seq.) and continued its operations as a debtor-in-possession until September 9, 1983 at which time the proceeding was converted to one under Chapter 7 and a trustee appointed. On December 2, 1983, the Government terminated its contract with Denalco alleging default on the part of Denalco. By that time the Government had advanced $1,464,835.00 to Denalco in the form of progress payments of which $1,400,731.78 remains unliquidated. Denalco was also indebted to the Bank in excess of $581,222.40 which included the $64,000.00 loan made on July 1, 1982.

## CONTENTIONS

The Government's basic argument is that the Government holds title to the Mazak under the title-vesting clause of its contract with Denalco, and that since the title to the Mazak passed to the Government as soon as Denalco obtained title, Denalco had no interest in the Mazak when it attempted to pledge the Mazak to the Bank as collateral.

The Bank's argument is more complex. First, the Bank contends that it is not subject to the title-vesting clause of the contract between Denalco and the Government because the Bank is not a party to the contract. Secondly, they argue that their security interest in the Mazak attached prior to any interest the Government may have by virtue of their $64,000 loan to Denalco to pay off the balance due the seller of the machine. Third, the Bank makes a Fifth Amendment argument that the Government's taking of the Mazak, which effectively extinguishes the Bank's

1. By agreement of the parties, the Mazak Micro Center has been sold and the proceeds put in escrow pending the outcome of the proceedings. It is these proceeds which each side is seeking.

There is approximately $103,000 in this escrow account. The trustee, a named defendant in this action, makes no claims to these monies and is not participating in these proceedings.

purchase money security interest, represents a compensable taking under the Fifth Amendment. Lastly, the Bank argues that application of the title-vesting clause, thereby extinguishing the Bank's purchase money security interest, would impose an unjustified loss on the Bank.

## DISCUSSION

The cross-motions for summary judgment were brought pursuant to Rule 7056 of the Rules of Bankruptcy Procedure which applies Rule 56 of the Federal Rules of Civil Procedure to summary judgment actions in adversary proceedings.

The primary purpose of a motion for summary judgment is to avoid an unnecessary trial and Rule 56 is the procedural device for promptly disposing of actions in which there is no genuine issue of any material fact. *Mintz v. Mather's Fund, Inc.*, 463 F.2d 495 (7th Cir.1972). Federal Rule 56(c) states that the

> judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Rule 56(c) F.R.C.P. Therefore, the first inquiry the court must make is whether, based on the pleadings, memoranda, affidavits and other materials, there exists a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law. *U.S. v. O.*

*Frank Heinz Construction Co.*, 300 F.Supp. 396, 399 (D.C.Ill.1969).

The parties urge the Court to reach different conclusions based on their respective interpretations of the law. However, there does not appear from the evidence suggested by either side any fact which raises a genuine dispute which is material or relevant to the Court arriving at a judgment as a matter of law. Therefore, the issue as to who has the superior interest in the Mazak can be rendered as a matter of law.

### I.

The contract entered into between Denalco and the Government includes the standard "title vesting" clause [2] contained in contracts between the Government (Department of the Army) and small businesses wishing to obtain defense contracts. Under the contract, the Government makes progress payments to the contractor during the term of contract. The parties to the contract, Denalco and the Government, also agreed that title to all materials, inventory, fixtures and equipment which are chargeable to that contract whether acquired before or after the date of the contract, vests in the Government commencing at the time the contract is signed and continuing for the life of the contract.

There is no doubt that when the Federal Government enters into a contractual agreement under the laws of the United States, federal law applies to questions involving the Government's rights under the contract. *United States v. Kimball Foods, Inc.*, 440 U.S. 715, 726, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979); *Clear-*

---

**2.** The title-vesting clause referred to reads as follows:

> (d) Title. Immediately, upon the date of this contract, title to all parts; materials; inventories; work in process; special tooling as defined in the clause of this contract entitled to "Special Tooling"; special test equipment and other special tooling to which the Government is to acquire title pursuant to any other provision of this contract; nondurable (i.e. noncapital) tools, jigs, dies, fixtures, molds, patterns, taps, gauges, test equipment, and other similar manufacturing aids title to which is not obtained as special tooling pursu-

ant to this paragraph; and drawings and technical data (to the extent delivery thereof to the Government is required by other provisions of this contract); theretofore acquired or produced by the Contractor and allocable or properly chargeable to this contract under sound and generally accepted accounting principles and practices shall forthwith vest in the Government; and title to all like property thereafter acquired or produced by the Contractor and allocable or property chargeable to this contract as aforesaid shall forthwith vest in the Government upon said acquisition, production or allocation.

*field Trust v. United States*, 318 U.S. 363, 366, 63 S.Ct. 573, 574, 87 L.Ed. 838 (1943).

■ Title-vesting clauses, such as the one involved here, have been consistently upheld to effectuate the passage of title to the Government of the chattels involved in all but one case.[3] *See e.g. United States v. Ansonia Brass and Copper Co.*, 218 U.S. 452, 31 S.Ct. 49, 54 L.Ed. 1107 (1910); *United States v. Digital Products Corp.*, 624 F.2d 690 (5th Cir.1980); *In re Double H Products*, 462 F.2d 52 (3d Cir.1972); *United States v. American Pouch Foods*, 30 B.R. 1015 (N.D.Ill.1983); *In re Vesco Industries*, 27 B.R. 615 (Bkrptcy.App.Panel, 9th Cir.1982); and *In re Economy Cab and Tool Co., Inc.*, 47 B.R. 708, 12 B.C.D. 1184 (Bkrptcy.Minn.1985). As the Supreme Court stated in its first (1910) encounter with a title-vesting clause:

> But it is equally well settled that if the contract is such as to clearly express the intention of the parties that the builder shall sell and the purchasor shall buy the ship before its completion, and at the different stages of its progress, and this purpose is expressed in the words of the contract, it is binding and effectual in law to pass title.

*Ansonia Brass*, 218 U.S. 452, 467, 31 S.Ct. 49, 52. Since it is abundantly clear that the title-vesting clause is a valid exercise of the Government's contractual authority, the question becomes not if, but when the title vested in the Government.

### II.

■ The Bank argues that its security interest vested in the Mazak prior to any interest of the Government because the Bank has a purchase money security interest in the machine by virtue of § 9–107 of the Illinois Commercial Code. This argument fails. In fact, the opposite is true. The moment any interest in the Mazak attached to Denalco, that interest, whatev-

er it was, passed immediately to the Government. There was no time at which the security interest of the Bank could have attached to the Mazak because the Government already had title. The title-vesting clause of the contract vested absolute title in the Government. Denalco had no property rights in the Mazak to assign to the Bank and the Bank acquired none.

### III.

The Bank mistakenly relies on *Armstrong v. United States*, 364 U.S. 40, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960) and *In re Murdock Mach. and Eng. Co. of Utah*, 620 F.2d 767 (10th Cir.1980). *Armstrong* did not involve a title-vesting clause such as the one here. In *Armstrong*, the contract provided that upon termination of the contract,. title to completed and incompleted work would be transferred to the Government. *Id.*, 364 U.S. at 41, 80 S.Ct. at 1564. During the construction phase of the contract, the plaintiffs in *Armstrong* had supplied various services and materials to the contractor while title to all of the work-in-progress was still vested in the contractor. By operation of state law, a lien in favor of the suppliers automatically attached to the ships. "The terms of the contract between Rice [the contractor] and the United States show conclusively that Rice, not the United States, had title to the property when petitioners furnished their materials." *Id.* at 43, 80 S.Ct. at 1566. Thus the facts in *Armstrong* were different than the facts before the Court in this case. Here, title to the property vested in the Government during the life of the contract, not at the contract's termination.

Since it is clear that the Government had title to the Mazak prior to the attachment of a lien by the Bank, the Bank's Fifth Amendment taking argument fails. Denalco had no rights in the Mazak to assign to

---

3. That one exception is *Marine Midland Bank v. United States*, 687 F.2d 395, 231 Ct.Cl. 496 (1982) which held that the title-vesting clause merely established a lien in favor of the government and did not confer title to the government. The holding in *Marine Midland* was specifically re- jected in this district in *United States v. American Pouch Foods, Inc.*, 30 B.R. 1015 (N.D.Ill. 1983). For the reasons set forth in *American Pouch*, this Court agrees that *Marine Midland* was incorrectly decided.

the Bank, therefore, there is no taking of any property interest of the Bank by the Government.

Similarly, in *Murdock, supra,* the title to the property in dispute never transferred to the Government because the plaintiff seller never transferred title to the government contractor. *Murdock* involved a situation where the plaintiff, Ramco, sold steel on credit to the Government contractor, Murdock. The contract between the Government and Murdock contained a title-vesting clause. While a shipment of steel was in route from Ramco to Murdock, Ramco learned of Murdock's insolvency and Ramco stopped delivery mid-shipment. The court in *Murdock* held that Ramco's reclamation rights under the U.C.C. were superior to any rights of the Government, *Id.* at 773 and thus, the rights to the steel belonged to Ramco. In the case at bar, however, the facts are significantly different. The bank is not a supplier of raw product to Denalco nor did the Bank ever have title to the Mazak. Ramco was a supplier of raw material to Murdock and under the court's rationale, always had title to the steel. *Murdock* at 777.

### IV.

Lastly, the Bank argues that it would impose an unjustified loss on the Bank if it is held that the Government's interest by virtue of the title-vesting clause extinguishes their interest when the Bank had no knowledge of title-vesting provisions.

▐ Title passing provisions have been held effective against innocent third party creditors. *Shepard Engineering Co. v. United States,* 287 F.2d 737 (8th Cir.1961); *In re American Boiler Works,* 220 F.2d 319 (3d Cir.1955). In this case, however, the Bank is not even an innocent third party creditor as it admits it knew of the Government contract and that the Mazak was to be used in the performance of the contract. It is irrelevant that a lien search of records at the Secretary of State performed by the bank did not reveal the Government's interest in the Mazak. The Government, in programs such as this, is not required to file state financing statements for two reasons: first, unless required by federal statute, the Federal Government is not required to conform to state law in order to create a valid federal lien, *In re Double H Products Corp.,* 462 F.2d 52, 57 (3d Cir.1972) and the federal interest herein acquired is not a lien, but an absolute title. A bank that chooses to do business with a company that is a government contractor does so at its own risk and it is incumbent upon the bank to examine the relationship between the government and the contractor to see how it might affect the bank. This is merely good, prudent banking practice. Even if, arguendo, all the Government received was a lien on the Mazak, its lien would be superior to the Bank's. 10 U.S.C. § 2307(c) (1976).

### CONCLUSION

For the above stated reasons, this Court finds that as a matter of law, title to the Mazak vested in the Government immediately upon Denalco's receipt of title to the Mazak. The Bank had no interest in the Mazak.

THEREFORE, IT IS HEREBY ORDERED that the plaintiff's motion for summary judgment is denied and the defendant's motion for summary judgment is granted.

IT IS FURTHER ORDERED that the proceeds from the sale of the Mazak being held in escrow be turned over to the United States.