## In re REYNOLDS MANUFACTURING COMPANY, Debtor.

## UNITED STATES DEPARTMENT OF ENERGY, Plaintiff,

v.

## REYNOLDS MANUFACTURING COMPANY and the Union National Bank of Pittsburgh, Defendants.

Bankruptcy No. 85–1981.
Adv. No. 86–221.

United States Bankruptcy Court,
W.D. Pennsylvania.

Dec. 4, 1986.

Terri Leigh Tribble, U.S. Dept. of Energy, Oak Ridge, Tenn., Barbara M. Carlin, Asst. U.S. Atty., Pittsburgh, Pa., for U.S. Dept. of Energy.

Joseph E. Ferens, Jr., Waggoner & Ferens, Uniontown, Pa., for debtor.

Gary Philip Nelson, Buchanan Ingersoll, P.C., Pittsburgh, Pa., for Union Nat. Bank.

David W. Lampl, Lampl, Sable, Makoroff & Libenson, Pittsburgh, Pa., for Unsecured Creditors' Committee.

### MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy Judge.

Before the Court is the Complaint for Declaratory Relief of the United States Department of Energy ("DOE" or "the Government") to determine the title to property in the possession of the Debtor, Reynolds Manufacturing Company ("Reynolds"). Reynolds obtained a Government

procurement subcontract ("the Subcontract") through a Government management contractor. The Subcontract contains a "title-vesting" clause that gives the Government title to all parts, materials, inventories, etc. ("the materials") acquired by Reynolds and chargeable to the Subcontract. Reynolds contends that it has title to the materials. The Union National Bank of Pittsburgh ("UNB") asserts that "the materials" are inventory subject to the perfected security interest of UNB. UNB argues that a title-vesting clause merely creates a lien. UNB argues that the priority of the Government's lien should be determined by a federal rule of decision that incorporates state law of priority under the Uniform Commercial Code.

This adversary raises the issue whether the rule of decision is based wholly on federal common law or incorporates the state Uniform Commercial Code. This Court believes that the unqualified holdings of the U.S. Supreme Court and the Courts of Appeals, including the Third Circuit, are that federal common law applies and that the title-vesting clause applies literally to vest the materials in the Government.

**FINDINGS OF FACT**

The United States Department of Energy owns two plants that enrich uranium for public and private customers. Some of the enriched uranium is used for national defense purposes. The two government-owned plants are operated by two management contractors, Martin Marietta Energy Systems, Inc. ("Energy Systems") and Goodyear Atomic Corporation ("GAT"). The plants are located in Paducah, Kentucky and Piketon, Ohio. Although DOE contracts for the management and operation of these plants, DOE is entirely responsible for funding the operation of these plants. Under DOE's managing and operating contract with Energy Systems dated March 30, 1984 (Contract No. DE–AC05–84OR21400), Energy Systems is authorized to act as agent for DOE for the purchase of needed materials and services for these plants.

Pursuant to Energy Systems' contract with DOE, Energy Systems solicited bids for the production of 2,000 uranium hexaflouride cylinders for use at the plants. On August 24, 1984, Energy Systems awarded Subcontract No. 28G–08844V to Reynolds. Reynolds agreed to manufacture and deliver 2,000 cylinders to the two plants for the years 1984–1986 in consideration of $3,197,-820.00. Under the Subcontract, the cylinders are consigned to DOE and Reynolds sends the cylinders to the plants. The Government is charged $1,603.91 or $1,583.91 per cylinder, depending on the point of delivery. The cylinders are used in the two plants for the storage of uranium "tails".

As Terms and Conditions, the Reynolds' Subcontract contains a federally required clause for fixed-price contracts under which the Government provides progress payments on costs. This clause is incorporated in the Subcontract in provisions entitled "Progress Payments for Small Business Concerns—Total Costs (12–82)." See 48 C.F.R. § 52.232–16, Federal acquisition regulations for small business concerns receiving progress payments. Under the terms and conditions of these provisions, Reynolds receives 95% of its total costs incurred under the Subcontract. DOE is the source of payments to Reynolds and the Subcontract is clearly a Government procurement contract.

The title-vesting clause of the Progress Payments provisions reads:

Immediately, upon the date of this subcontract, title to all parts; materials; inventories; work in process ... theretofore acquired or produced by the Seller [Reynolds] and allocable or properly chargeable to this subcontract under sound and generally accepted accounting principles and practices shall forthwith vest in the Government; and title to all like property thereafter acquired or produced by the Seller and allocable to properly chargeable to this subcontract as aforesaid shall forthwith vest in the Government upon said acquisition, production or allocation.

The Subcontract also incorporates a document entitled, "Terms and Conditions L (6–81)." The "Title and Administration" clause of this document states:

It is understood and agreed that this subcontract is entered into by the Company [Energy Systems] for and on behalf of the Government [the United States, including DOE]; that title to all supplies furnished hereunder by the Seller [Reynolds] shall pass directly from the Seller to the Government as purchaser, at the point of delivery [acquisition by Reynolds]; that the Company [Energy Systems] is authorized to and will make payment hereunder from Government funds advanced and agreed to be advanced to it by DOE, and not from its own assets, and administer this subcontract in other respects for DOE, unless specifically provided for herein; that administration of this subcontract may be transferred from the Company to DOE or its designee, and in case of such transfer and notice thereof to the Seller, the Company shall have no further responsibilities hereunder; and that nothing herein shall preclude liability of the Government from any payment properly due hereunder if for any reason such payment is not made by the Company from such Government funds.

It is clear from the Subcontract and the transaction as a whole that "Government" refers to DOE. The Subcontract states in numerous places that it is certified for national defense use "with a priority of DO E2." The Government has filed an affidavit from a DOE assistant manager for uranium enriching operations. He states that the uranium hexaflouride cylinders are certified for national defense purposes under the Defense Production Act of 1950, as amended. 50 U.S.C.App. § 2061 *et seq.* See 50 U.S.C.App. § 2062 (purpose of Act is national defense preparedness). He further states that the plants "enrich uranium for customers in both the private and public sectors and for national defense purposes, to include production of nuclear weapons and naval reactors." The produc-

tion of the cylinders has priority for national defense needs.

Under the Progress Payments clause of the Subcontract, Reynolds submitted a request for $789,777.75 on October 25, 1984, and submitted a request for $1,140,414.87 on November 25, 1984. Including other payments, Reynolds received a total of $2,452,968.13 drawn on a Government account by Energy Systems. The Government states that the 859 cylinders received by Energy Systems had a value of $1,351,-292.20 while Reynolds claims these cylinders had a value of $1,814,201.31.

On September 5, 1986, Reynolds filed a Voluntary Petition for Relief under Chapter 11. Since that date, Reynolds has not delivered any cylinders under the Subcontract. A total of 1,141 cylinders remain to be delivered. DOE states that the total progress payments made to Reynolds exceed the value of the cylinders delivered by $1,106,675.91. This is disputed. Reynolds claims that the progress payments exceed the contract price of the delivered cylinders by $638,766.82. Reynolds has sufficient material in its possession to manufacture 208 cylinders. The Government has itemized these materials in Exhibit "C" to the Complaint. Reynolds lists these materials on its Schedule of Assets and Liabilities filed in its Bankruptcy Petition. The Government claims that the materials have an approximate value of $245,000.

In addition, the Government claims that Reynolds possesses 79 Government-owned and furnished valves worth $100 apiece. The valves will be incorporated into the cylinders.

On or about October 11, 1983, Reynolds granted Union National Bank of Pittsburgh a security interest in equipment, inventory, claims and accounts receivable. UNB made previous secured loans to Reynolds. UNB states the following: It has perfected its security interest in Reynolds' inventory by filing a financing statement with the Secretary of State of Pennsylvania and with the Prothonotary of Westmoreland County. Its security agreements and financing statements with Reynolds provide

it with a perfected UCC security interest in all of the materials which form the basis of the Government's Complaint. On July 27, 1984, Reynolds and UNB entered into a Demand Line of Credit Agreement under which Reynolds is obligated to UNB in an amount in excess of $300,000. UNB alleges that the Government had a junior interest, if any, in Reynolds' assets and inventory. UNB argues that when it loaned money to Reynolds, Reynolds was not a Government contractor or subcontractor. UNB asserts that it did not have notice of the Subcontract with Energy Systems when money was loaned to Reynolds. UNB argues that the Government has not recorded any security interest in the materials for the cylinders under the UCC procedures.

## CONCLUSIONS OF LAW

■ The Government has filed a Motion for Summary Judgment. Under Bankruptcy Rule 7056, which incorporates Rule 56 F.R.Civ.P., summary judgment is granted in adversary proceedings when there is no genuine issue of material fact. On the basis of the Complaint, the attached Subcontract, Reynolds' Answer, and the DOE Affidavit, the Court concludes that there is no dispute of material facts. UNB argues that material facts are in dispute: specifically whether Government funds were used to purchase the materials in which the Government claims title, and whether the cylinders are essential to the national defense. Although Summary Judgment could be decided without determining these facts, the Court believes that the pleadings and the Subcontract answer these issues. The Supreme Court, Courts of Appeals including the Third Circuit, and other federal courts have decided the legal issues raised by UNB. The Court finds that the UNB arguments are without merit.

The Subcontract between Energy Systems and Reynolds contains a standard "title-vesting" clause in its "Progress Payment for Small Business Concerns" provisions. Federal agencies require this exact language in Government procurement contracts with small businesses. The Govern-

ment has used similar clauses in procurement contracts for many years. Reynolds does not dispute that the source of these progress payments is the Federal Government and that the cylinders are used in federally-owned plants that enrich uranium for national defense. UNB appears to believe this latter fact is in dispute.

Federal rule of decision controls who has title to the material and the construction of the Subcontract. In *United States v. Allegheny County, Pa.*, 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209 (1944), the Supreme Court stated:

> Procurement policies so settled under federal authority may not be defeated or limited by state law. The purpose of the supremacy clause was to avoid the introduction of disparities, confusions and conflicts which would follow if the Government's general authority were subject to local controls. The validity and construction of contracts through which the United States is exercising its constitutional functions, their consequences on the rights and obligations of the parties, the titles and liens which they create or permit, all present questions of federal law not controlled by the law of any state. 64 S.Ct. at 913–914.

See also *Clearfield Trust Co. v. United States*, 318 U.S. 363, 366, 63 S.Ct. 573, 575, 87 L.Ed. 838 (1943) (when the United States disburses funds, its rights are governed by federal law, not local law); *In re Double H Products Corporation*, 462 F.2d 52 (3d Cir. 1972).

The Government asserts that the title-vesting clause in the Subcontract clearly provides that title to all parts, materials, inventories, and work in process, which are chargeable to the Subcontract, vests in the Government when Reynolds acquires, produces, or allocates them. Under the title-vesting clause, title is not contingent upon the Government paying for the materials. The clause speaks of full title and not an equitable, beneficial or security interest. The clause does not imply the creation of any lien.

Title-vesting clauses in U.S. Government contracts have been repeatedly upheld by the federal courts and are the law of the United States. Under these clauses, when a Government contractor receives subject material and property, title passes automatically to the United States. *United States v. Ansonia Brass and Copper Co.,* 218 U.S. 452, 31 S.Ct. 49, 54 L.Ed. 1107 (1910); *In re Double H Products,* 462 F.2d 52 (3d Cir.1972); *In re American Boiler Works,* 220 F.2d 319 (3d Cir.1955); *In re American Pouch Foods, Inc.,* 769 F.2d 1190 (7th Cir.1985), aff'g 30 B.R. 1015 (D.C. N.D.Ill.E.D.1983); *In re Denalco Corp.,* 51 B.R. 77 (Bkrtcy.N.D.Ill.1985); *In re Verco Industries,* 27 B.R. 615 (9th Cir. BAP 1982); *In re Economy Cab and Tool Co., Inc.,* 47 B.R. 708 (Bkrtcy.Minn.1985).

In *Ansonia Brass,* the Supreme Court held that under a title-vesting clause for possession of a dredge under construction, title vested in the Government as fast as it made payments. The contract provided that "the parts paid for under the system of partial payments above specified shall become thereby the sole property of the United States." The Court overruled materialman's claims for supply liens made under Virginia law.

The Court noted:

It would have been competent for the United States, if they wished to avoid the inconvenience or danger of delay arising from liens in favor of private persons, to make their contract in such form as to devest the builder of any title to the property in the vessel during the process of construction.... 281 U.S. at 470, 31 S.Ct. at 54.

More recently, the Court of Appeals for the Third Circuit upheld title-vesting clauses in two cases. In *In re Double H Products Corporation, supra,* a case almost directly dispositive of all issues in this case, the Third Circuit upheld the title-vesting clause against a bank that was perfected under the New Jersey Uniform Commercial Code. The Government contracted for the construction of missile stowage cradles, which were essential to national defense. UNB argues that the Government has to comply with state recording requirements to perfect any lien or security interest in the cylinders and materials. However, the Court of Appeals in *Double H Products* held that "... unless a federal statute requires recording with the State, the United States is not required to conform to State law in order to create a valid federal lien." 462 F.2d at 57. Also, in *American Boiler Works, supra,* the Court of Appeals for the Third Circuit stated that the Government, as sovereign, was not required to comply with state recording requirements. 220 F.2d at 321.

In the latter case, the Third Circuit upheld a title-vesting clause against a Trustee in bankruptcy for possession of seven tugs in construction and related materials. As in the instant case, title-passing was not contingent on receipt by the contractor of progress payments.

The Court of Appeals concluded:

The title, both to the vessels and to materials, vested in the government with no ifs, ands or buts. And without any mention of payment as a prerequisite thereto. *Id.*

UNB argues that title-vesting clauses can only create liens. The Court of Appeals has firmly rejected this in *In re Double H Products:*

Contentions such as these [that the "title vesting" clause creates a lien] have frequently been advanced over the years in attempts to escape the effect of the title-passing provisions of fixed-price Government contract partial [progress] payment clauses. "At least to the extent of the partial [progress] payments, the courts have, in a variety of situations, almost unanimously sustained the provision as effecting a full and complete passage of title or ownership, and as not creating only a lien or security interest." [citations omitted] 462 F.2d at 55.

Title to the materials passed to the Government when Reynolds acquired them. UNB's perfected security interest in inventory never attached to these materials.

UNB argues that it is an innocent third party and that it has a legal right to be paid for its security interest. Title-passing clauses have been held effective against innocent third party creditors. The Third Circuit stated in *In re American Boiler Works* that:

Regardless of whether the reason back of the provision is beneficial or harsh, however, here we have the sovereign making a contract. In the absence of constitutional inhibitions the sovereign can make such contract as it pleases and no one can object. 220 F.2d at 321.

■ This Court believes that the title-vesting clause is to be literally applied to all property irrespective of whether it relates to the national security or whether the Government has paid for the cylinders and materials. However, when the goods acquired are for the national defense, then the purpose for a title-vesting clause for a literal application of its language is even clearer. The Subcontract describes the cylinders as for the national defense. Reynolds does not dispute this purpose. Reynolds admits that the cylinders are to be used at government plants that enrich uranium for national defense purposes including nuclear weapons and naval reactors. DOE's affidavit supports this conclusion. The Subcontract has a DO E2 priority rating under the Defense Production Act of 1950, as amended. 50 U.S.C.App. § 2061 *et seq.* Under the U.S. Department of Commerce regulations, suppliers must give rated contracts a priority in performance. 15 C.F.R. § 350.3. The purpose of the priority rating is to keep the national defense programs on schedule. 15 C.F.R. § 350.1.

UNB would allow the Government to receive possession of the 208 additional cylinders and the materials after it pays for them twice. UNB's brief at 12. The title-vesting clause was meant to prevent this result.

Reynolds and the Government dispute by what amount the progress payments exceed the value of the cylinders delivered. Reynolds' says that progress payments are $638,766.82 in excess of the contract price

of the delivered cylinders. Two hundred eight cylinders remain to be manufactured and delivered. At a cost of $1,603.91 per cylinder (the lower unit cost is $1,583.91 per cylinder), 208 cylinders would cost $333,613.28. Thus, by using Reynolds' calculations, the Government has paid for all of the materials in Reynolds' possession. However, even if the Government did not make progress payments for the 208 cylinders, title would still automatically vest in the Government under the Subcontract. *In re Economy Cab and Tool Co., Inc.,* 47 B.R. 708, 711 (Bkrtcy.Minn.1985).

UNB urges the Court to accept the conclusion of the Court of Claims in *Marine Midland Bank v. United States,* 687 F.2d 395, 231 Ct.Cl. 496 (1982), cert. denied, 460 U.S. 1037, 103 S.Ct. 1427, 75 L.Ed.2d 788 (1983), that the title-vesting clause conferred a lien in favor of the Government and did not confer title. However, in this case, the Court of Claims declined to apply the state UCC as the federal rule of decision to govern priority. Instead, the Court chose the rule that the Government's security interest under its title-vesting clause is paramount to liens of general creditors. 687 F.2d at 404. This Court agrees with the Court of Appeals for the Seventh Circuit that *Marine Midland* was wrongly decided. *In re American Pouch Foods, Inc.,* 769 F.2d 1190, 1196 (7th Cir.1985).

■ UNB argues that because the Government did not file a notice of its lien or tag the property, the Government is therefore estopped and waives any property interest. These doctrines have been rejected as defenses to actions by the United States for the recovery of property to which it is legally entitled. *In re Double H Products Corp., supra,* 462 F.2d at 58.

## CONCLUSION

The plain language of the Subcontract governs the rights of the parties. The relevant provisions are to be literally applied. The Plaintiff possesses full and absolute title in the property covered by the title-vesting clause in the Subcontract, including the materials listed in Exhibit "C"

to the Complaint. Reynolds and UNB have no interest in this property.

An appropriate Order will issue.