**In re WINCOM CORPORATION, Debtor.**

**UNITED STATES of America, Plaintiff,**

**v.**

**WINCOM CORPORATION, Defendant.**

**Bankruptcy No. 86–10573–HL.**

**Adv. P. No. 87–1013.**

United States Bankruptcy Court, D. Massachusetts.

April 2, 1987.

Sumner Darman, Silverman & Kudisch, Boston, Mass., for debtor.

Robert Mueller, III (U.S. Atty.) by Joseph Ackerstein, Asst. U.S. Atty., Boston, Mass., for U.S.A.

## MEMORANDUM ON DEBTOR'S COUNTERCLAIM RELATIVE TO GOVERNMENT'S INTEREST IN CONTRACT MATERIALS

HAROLD LAVIEN, Bankruptcy Judge.

The debtor, as a Chapter 11 debtor-in-possession, rejected an executory contract it had entered into with the United States government, under which it was to manufacture 24 antennae for submarines. The government submitted a proof of claim on which it described itself as an unsecured creditor. Subsequently, the debtor noticed out a private sale under which, according to Bankruptcy Rule 6004(b) and local practice, any party in interest was allowed an opportunity to object. The government entered an objection, claiming title and right to possession to the antennae. Simultaneously, on January 21, the government filed a complaint and the debtor answered and counterclaimed. Briefs were filed by both sides and oral argument held on February 2, 1987. The parties reached a stipulation, under which the government was allowed to take possession of the antennae and materials associated therewith. However, the debtor retained its right to assert by virtue of its counterclaim any monetary claims it may have as to its alleged interest in the materials. The debtor, on March 5, 1987, submitted an answer and amended counterclaim seeking (1) A declaratory judgment finding its interest in the materials superior to the government, and (2) The value of the goods to be in the amount of $968,180.00. The parties have agreed that the first of these counterclaims is all that need be decided at this juncture and further agree that they will rely solely on the briefs and oral argument presented to the Court at the time of the objected to sale.

Included in the contract in question, and pursuant to the Defense Acquisition Regulations ("DARS") at 7–104.35(B) and the Code of Federal Regulations at 32 CFR § 163.79 (1984) 7–104.35(b), is a clause enti-

tled, "Progress Payments for Small Business Concerns", in which Wincom was given the right to monthly progress payments, upon request. Payments were not to exceed ninety (90%) percent of Wincom's cost incurred to the date of payment. Debtor has received in excess of $300,000.00 in payments under this arrangement.

The question before the Court is one of first impression within this Circuit. Courts in various other circuits have reviewed this specific question and the overriding majority have found the Government to hold title and not a security interest in all of the materials designated for use under the contract. The importance of this distinction rests in Article 9 of the Uniform Commercial Code ("U.C.C."), as adopted by Massachusetts, requiring a security interest to be appropriately filed in order to be effective against subsequent lienholders. Of course, in this case, the debtor steps into the shoes of a trustee and possesses the powers of a valid lienholder under 11 U.S.C. § 544. As a result, since the government did not record, if this Court were to find the Government merely holding a security interest, then the debtor would hold a superior interest in the materials in question and the Government would be deemed an unsecured creditor. A title clause such as is present in this case would generally be considered a security agreement, if the United States Government were not involved. As stated in *In re American Pouch Foods, Inc.*, 769 F.2d 1190, 1193 (7th Cir.1985):

> We acknowledge, generally, that contract language which purports to place title to goods in a party not in possession of them may well create only a security interest in that party. *See, e.g.*, Commercial Code provisions, Ill.Rev.Stat. ch. 26, §§ 1-201(37) (Supp.1985), 9-102 and 9-202 (1974). The terms of this contract left *Pouch* with many of the incidents and risks of ownership.

Thus there would be considerable reason to treat provisions like these, if found in a private contract, as creating a security interest. On the other hand, this is a contract for the procurement of materials for national defense, with its terms spelled out in the regulations of the Defense Department, 32 C.F.R. § 163.79, and a history suggesting a substantial reason for very literal interpretation of the title vesting language.

Also, *see*, Mass.Gen.L. c. 106 §§ 1-201(37), 9-102 and 9-202.

The confusion in this matter stems from 10 U.S.C. § 2307(c) which allows for a superior lien in the case of advance payments, but omits mention of title vesting and Progress Payments. The debtor concedes that the use of the term advance payment in this instance is appropriately read as encompassing progress payments.

The court in *In re American Pouch Foods, Inc., Supra*, considered the omission of progress payments and title vesting from 10 U.S.C. § 2307(c) and reviewed the long history of title vesting in the government as a requirement for progress payments. The court traced the history of the title vesting clause back to 1823, when the government was prohibited from making monetary advancements in excess of what it had received. This prohibition went through various modifications and, at times, was excluded altogether for particular military agencies. However, all told, the government has rather consistently required title vesting.

The court determined Congress to have intended a continuation of title vesting in conjunction with progress payments and explained the omission of such a clause from the appropriate statute as an indication of the widespread recognition and acceptance of the title vesting clause.

The validity of the title vesting clause was first determined in *United States v. Ansonia Brass and Copper Co.*, 218 U.S. 452, 31 S.Ct. 49, 54 L.Ed. 1107 (1910). There are differences in the language of the contract under review in *Ansonia* and the one before the court, however, the distinction is inconsequential and the finding of the court in *Ansonia* most relevant to the matter at hand.

It is undoubtedly true that the mere facts that the vessel is to be paid for in installments as the work progresses, and

to be built under the superintendence of a government inspector, who had power to reject or approve the materials, will not of themselves work the transfer of the title of a vessel to be constructed, in advance of its completion. But it is equally well settled that if the contract is such as to clearly express the intention of the parties that the builder shall sell and the purchaser shall buy the ship before its completion, and at the different stages of its progress, and this purpose is expressed in the words of the contract, it is binding and effectual in law to pass the title. 2 Parsons on Contracts, 8th ed. 259, and cases cited. At 466.

The *American Pouch* case is the most important recent case to have addressed the issue of title. The court found the title vesting clause operative, and in reaching this conclusion, placed tremendous importance on the fact that the contract had been entered into for military supplies. A number of cases have found the title vesting clause operative in military contracts. *See, In re Double H Products, Inc.*, 462 F.2d 52 (3rd Cir.1972); *In re Verco Industries,* 27 B.R. 615 (Bankr. 9th Cir.1982); *In re Economy Cab and Tool Co.*, 47 B.R. 708 (Bankr.D.Minn.1985) and *In re Denalco,* 51 B.R. 77 (Bankr.N.D.Ill.1985), *rev'd* on other grounds, 57 B.R. 392 (N.D.Ill.1986).

Against this wide body of consistent case law are two cases which find the government to possess an equitable lien that need not comply with the U.C.C. recording requirements, *Marine Midland Bank v. United States,* 687 F.2d 395, 231 Ct.Cl. 496 (1982); *United States v. Lennox Metal Manufacturing Co., Inc.,* 225 F.2d 302 (2nd Cir.1955). These two cases, as well as every other case cited by the debtor in support of its position, *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979); *In re Murdock Machine and Eng. Co. of Utah,* 620 F.2d 767 (10th Cir.1980), have been considered and distinguished by the court in *American Pouch.* It is important to recognize that the *Lennox Metal* decision was issued prior to the *Kimbell* opinion which held that the Small Business Administra-

tion and Farmers Home Administration were required to comply with state law U.C.C. filing requirements, however, the court in *Kimbell* did not make mention of *Lennox* and its finding of an equitable lien in the case of a military procurement contract. Also, the court in *American Pouch* at 1197 made a point of mentioning that the *Lennox* case has not been followed, and has been criticized. Finally, it should be noted that neither the debtor nor our own research has found any decision subsequent to *American Pouch* which follows the position taken in *Marine Midland* and *Lennox.* The debtor is really fighting an uphill battle.

As a result of this wide body of consistent case law, firmly supporting the government's position, this Court reluctantly follows suit. Reluctantly, because while Congress has the authority to establish title as it sees fit, particularly in the matter of national defense, it has not seen fit to do so. In the absence of a specific statutory exception, the government should be held to the same standards as any other contracting party. Thereby providing uniformity and fairness to other potential creditors of entities dealing with the government who, by checking with the locations for recording, as provided by the Uniform Commercial Code, can evaluate the risk in doing business. The government seeks to distinguish the case of *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979), (previously mentioned for holding that the Small Business Administration and Farmer's Home Administration had to comply with the U.C.C.) on the basis that the Defense Department is not in the business of lending money when it pays in advance of delivery of the finished items. Certainly, the government's attorneys and contract negotiators should not find the U.C.C. any more difficult to comply with than the myriads of Defense Department contract provisions. Is the government really buying the incomplete components or the financing of the finished product? In a somewhat analagous context, the Supreme Court has recognized that despite precedent and statu-

**4**

tory language, the Internal Revenue Service had a security interest and not title. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). In the matter at hand, the debtor bears the risk of loss until delay, the tested samples remain the property of the debtor as does any excess material at the contracts completion without any bill of sale from the government. The reality seems more consistent with a security interest until completion when, on delivery, title passes. This view has recently been set forth rather forceably by Professor White in an article entitled *Dancing on the Edge of Article 9*, 91 Comm.L.J. 385 (Winter 1986). However, if the long established practice and precedents with its obvious practical implications is to be overturned, it should be done by a court of more certain jurisdiction.

It should be noted that the finding of title in the government does not conclude the matter. As pointed out by the court in *American Pouch*, the same result occurred in its case, whether the court found title in the government or an equitable lien as in *Midland Marine* or *Lennox*, since the value of the goods did not exceed the total of progress payments. Here, that appears to be a question and, if so, the government whose legitimate concerns need protection, should not receive thereby any unjust enrichment at the expense of innocent creditors. To the extent that the government has received property worth more than it paid, it should be responsible for the excess. A hearing on evaluation may be required. The parties should agree on a date for hearing, and if they cannot so agree, should advise the Court.