**In re COATED SALES, INC., et al., Debtors.**

**COATED SALES, INC., Plaintiff,**

**v.**

**HIGHLAND INDUSTRIES, INC., Defendant.**

Bankruptcy Nos. 88 B 11331 (CB), 88 B 11336 (CB).
Adv. No. 88–5721A.

United States Bankruptcy Court, S.D. New York.

Nov. 7, 1988.

Levin & Weintraub & Crames, New York City, for debtors/plaintiff; Lester M. Kirshenbaum and M. Diane Jasinski, of counsel.

Weil, Gotshal & Manges, New York City, for defendant Highland Industries, Inc., Martin J. Bienenstock, Judy G.Z. Liu and Kevin Barret, of counsel.

U.S. Atty., S.D.N.Y., New York City, Susan P. Johnson, Asst. U.S. Atty., of counsel.

DECISION DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

CORNELIUS BLACKSHEAR,
Bankruptcy Judge.

Highland Industries, Inc. ("Highland") entered into a contract with Coated Sales, Inc. ("Coated Sales") on November 25, 1987, for the manufacture of certain fabric called sage green nomex. That contract is known as the Commission Weaving Contract, and is related to a separate contract which Coated Sales entered into with the United States Government for the delivery of the sage green nomex fabric.

Coated Sales wants to assume the Commission Weaving Contract by paying the prepetition amounts owed to Highland under that contract, but does not want to provide adequate protection to Highland for the possessory, statutory and contractual liens that Highland asserts on the contract goods that relate to the contract and which are in Highland's possession.

Highland asserts liens on the contract goods as security for approximately $2.4 million of debt owed by Coated Sales to Highland under certain other prepetition contracts. Highland was never paid for the amount of those goods.

Highland filed a motion to compel Coated Sales to assume or reject several other executory contracts with Highland. That motion was resolved except for the Commission Weaving Contract.

On August 25, 1988, Coated Sales filed a complaint against Highland to determine whether or not Highland could assert valid statutory and contractual liens against the Commission Weaving Contract goods. Highland moved for summary judgment in lieu of an answer; on October 18, 1988, this Court heard that motion as well as a related motion for adequate protection with respect to an agreement with Coated Sales to ship some of the contract goods to Coated Sales. We also note that by stipulation the United States Government has intervened in the action.

At the October 18, 1988 hearing, this Court framed two issues: (1) whether or not the Government has actual title, and (2) if the Government did not have actual title, what, if any, is the value of Highland's lien. At the hearing, this Court determined that if the Government did not have actual title they had a superior lien to that of Highland.

After a further reading of the memoranda submitted by all of the parties, it is the determination of this Court that the United States Government has actual title to the Commission Weaving Contract goods.

*Discussion*

In accordance with Federal regulations (*See* 32 C.F.R. § 163.79), Coated Sales' Government contract contained the following Title Vesting Provision:

Title to the property described in this paragraph (d) shall vest in the Government. Investiture shall be immediately upon the date of this contract, for property acquired or produced before that date. Otherwise, investiture shall occur when the property is or should have been allocable or properly chargeable to this contract.

█ Under the contract, as soon as progress payments were made by the United States to Coated Sales, title to the parts, materials, inventories and work in progress vested in the United States. Thus, when the United States made progress payments to Coated Sales on account of the yarn spun by China Grove, title to the yarn immediately vested in the United States. When the yarn was subsequently delivered to Highland, therefore, the yarn belonged, not to Coated Sales, but to the United States.

Title Vesting Provisions similar to the one in the case at bar have long been included in U.S. Government procurement contracts and have long been construed by courts as vesting title to the goods in the U.S. Government, thereby nullifying the assertion of liens in such goods by other parties.

Courts first recognized the validity of such provisions nearly eighty (80) years ago in *United States v. Ansonia Brass and Copper Company,* 218 U.S. 452, 31 S.Ct. 49, 54 L.Ed. 1107 (1910). In *Ansonia,* the United States had contracted with the William R. Trigg Company for the construction of three vessels. When the shipbuilder became insolvent, its creditors claimed liens against the three vessels under the lien laws of Virginia. The Supreme Court held that by virtue of the title vesting clause contained in one construction contract, which provided that parts partially paid for by the United States would become the sole property of the United States, absolute title to the vessel vested in the United States, and therefore no liens could be asserted against it without the consent of the Government. *Id.* at 469, 471, 31 S.Ct. at 53, 54.

*Ansonia* has been followed time and time again to uphold the efficacy of title vesting clauses to pass title to the Government, thereby safeguarding Government contract goods from liens such as those asserted by Highland. *See, e.g., In re American Pouch Foods, Inc.,* 769 F.2d 1190 (7th Cir.1985), *cert. denied,* 475 U.S. 1082, 106 S.Ct. 1459, 89 L.Ed.2d 716 (1986) *aff'g* 30 B.R. 1015 (D.D.C.1983); *In re Double H Products,* 462 F.2d 52 (3rd Cir.1972); *In re Wincom Corp.,* 76 B.R. 1 (Bankr.D. Mass.1987); *In re Reynolds Mfg. Co.,* 68 B.R. 219 (Bankr.W.D.Pa.1986); and *In re Economy Cab and Tool Co., Inc.,* 47 B.R. 708 (Bankr.D.Minn.1985). The need for this result is particularly compelling in such cases as this one in which the contracted-for goods are urgently needed for national defense. *Reynolds,* 68 B.R. at 224.

The finding that actual title vests in the government is so established that there should be no question. However, Highland relies upon *Marine Midland Bank. v. United States,* 687 F.2d 395, 231 Ct.Cl. 496 (1982), *cert. denied,* 460 U.S. 1037, 103 S.Ct. 1427, 75 L.Ed.2d 788 (1983) for the proposition that this Court should abandon decades of authority and hold that the title vesting clause in this case did not in fact convey title, but was merely a financing arrangement which gave the United States a lien on the contract goods.

The court in *Marine Midland* first noted that "Especially when defense procurement is involved, as in the case at bar, the government's title vesting provisions certainly operate to prevent the actual possession of goods contracted for by the government from passing to anyone else." 687 F.2d at 397. However, the court further held that the title vesting provisions were a "fiction" created to avoid violating 31 U.S.C. § 529 (now section 3324) which provided in pertinent part: No advance of public money shall be made in any case unless authorized by the appropriation concerned or other law. This effectively banned advance, partial and progress payments to contractors before contract completion. The court further stated that the Government's title vesting program was developed in response to 31 U.S.C. § 529, conditioning progress payments on the vesting of title, on the theory that there was no "advance" of public money if the government took something of value for its payments. 687 F.2d at 401. The court concluded that with the authorization of advance payments for government procurement contracts in 10 U.S.C. § 2307 in 1958, the title vesting "fiction" was no longer required to enable the progress payments to be made. Therefore, the court held that irrespective of the progress payments, the government merely had a lien on the property to secure the "loans" made to the contractor in the guise of progress payments.

This Court disagrees with the *Marine Midland* reasoning, and chooses to follow *American Pouch,* 769 F.2d 1190. *See also, Reynolds* 68 B.R. 219, *Economy Cab,* 47 B.R. 708.

In *American Pouch,* the court noted that advance payments are in the nature of loans, whereas progress payments are "more in the nature of purchases." 30 B.R. at 1019. Moreover, the court noted, title vesting and government ownership are associated with progress payment and liens with advance payments.

From a historical perspective, as early as 1885 the United States Attorney General held that the statutory prohibition against advances of public funds was not intended to bar payments for work in progress when the amount of the payment had been earned by the contractor. This administrative interpretation which became known as the "equivalent benefit theory," 18 Opinion Atty.Gen. 105 (1885), was subsequently accepted by accounting officers of the Government. 1 Comptroller Gen. 143 (1921). By 1941 the "equivalent benefit theory" was fully utilized by the Attorney General to support the well established Government procurement practices of making progress payments in exchange for title *or* making advance payments in return for a lien. Both arrangements were considered to be satisfactory, and within the law. *See* 20 Comptroller Gen. 917 at 918 (1941), *quoted in* Backman, "Defense Department Contract Financing," 25 George Washington Law Review 228, 229 n. 3 (1957).

The practice of progress payments was so well accepted and widespread practice that in 1958, when 10 U.S.C. § 2307 was amended to include broad authority to make progress payments, the necessity of doing so was questioned by the General Counsel for the Department of Defense. *See* S.Rep. No. 2201, 85th Cong., 2d Sess., reprinted in 1958 U.S.Code Congressional & Administrative News 4021, 4032 ("[T]his Department has long considered that it had authority in law to make ... progress payments under appropriate contractual agreements ...").

It is inconceivable that the 1958 legislation, which was intended generally "to facilitate procurement of property and services by the Government," 1958 U.S.Code Congressional & Administrative News 4021, would have abolished standard contractual protections, such as title vesting provisions, which had long been utilized by the Government to protect its property interests in contract goods, without even a mention of such intent anywhere in the legislative history. If Congress intended to overrule such long-standing Supreme Court precedents as *Ansonia,* it would

have made such an intent explicit. *Cf. Midlantic National Bank v. New Jersey Department of Environmental Protection,* 474 U.S. 494, 502, 106 S.Ct. 755, 760, 88 L.Ed.2d 859 (1986).

In affirming the district court in *American Pouch,* the Court of Appeals for the Seventh Circuit held that when Congress enacted § 2307 in 1958, it "recognized the practice of making progress payments in return for title and in expressly authorizing progress payments intended to validate the practice." 769 F.2d at 1195; *see also Wincom* 76 B.R. 1, *Reynolds,* 68 B.R. 219. Thus, when a government contract provides that title passes to the government when progress payments are made, the title vesting provisions should be interpreted literally.

### Conclusion

Under the Title Vesting Provision, title to the government goods had vested in the United States before Highland ever obtained possession thereof, and Highland does not have a lien in those goods. Highland is entitled to nothing other than the contract price for its weaving services from Coated Sales upon the assumption of the contract. Accordingly, Highland's motion for summary judgment is denied and Coated Sales' cross-motion for summary judgment is granted.

SETTLE order consistent with this opinion.