**In re ISLAND AIRLINES HAWAII, INC., Debtor.**

**Bankruptcy No. 82–00027.**

United States Bankruptcy Court, D. Hawaii.

May 9, 1984.

Susan Tius, David Proudfoot, Tod Tanaka, Honolulu, Hawaii, for movant.

James Leavitt, Honolulu, Hawaii, for trustee.

Arthur Oshiro, Honolulu, Hawaii, for I.R.S.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING PRIORITY OF SECURED INTEREST IN CASH PROCEEDS FROM SALE OF EQUIPMENT

JON J. CHINEN, Bankruptcy Judge.

On November 3, 1983, Pioneer Federal Savings Bank ("Pioneer"), a creditor of Island Airlines Hawaii, Inc. ("Debtor"), filed herein an Application to Abandon Cash Proceeds of Collateral Sale, wherein Pioneer asserted its first priority interest in cash proceeds of inventory and equipment sold by the Trustee. Since the balance owing to Pioneer on the mortgage after sale of the leasehold exceeded $300,000.00, Pioneer demanded abandonment of the $48,433.51 in cash proceeds of the sale to Pioneer due to debtor's lack of equity in said proceeds.

On December 2, 1983, First Venture Corporation, ("First Venture") another secured creditor of Debtor, filed herein an Application to Abandon Property, asserting priority over Pioneer's interest in $4,873.57 of the cash proceeds by way of a purchase money security interest in compliance with HRS 490:9–107 and HRS 490:9–312(4).

The two applications were consolidated for hearing before the undersigned judge, with testimony presented on December 9, 1983, and final argument presented on January 4, 1984. Present at said hearings were David Proudfoot and Tod Tanaka, representing First Venture, Susan Tius representing Pioneer, James Leavitt representing the Trustee, Ralph Aoki, Arthur Oshiro on behalf of the Internal Revenue Service, and Robert W. Hall, creditor herein, pro se.

By Order Abandoning Cash Proceeds of Collateral Sale to Pioneer Federal Savings Bank, entered herein on January 18, 1984, this Court ordered that the contested $4,873.57 be held by the Trustee pending further ruling, while the remainder of the proceeds, after adjustments agreed to by the parties, were ordered abandoned to Pioneer.

The Court being fully apprised of the record herein, the memoranda submitted by counsel and argument at the hearings, now enters the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. Pioneer holds a secured interest in the cash proceeds of the sale of equipment of debtor by way of a Leasehold Mortgage, Security Agreement and Financing Statement dated April 7, 1978, for the original sum of $440,000.00. On April 12, 1978, Uniform Commercial Code Financing Statement ("UCC–1") was recorded in the Bureau of Conveyances of the State of Hawaii in Liber 12825, Page 301.

2. First Venture, claiming to be a secured creditor of debtor in excess of $400,000.00, recorded on June 16, 1978 a UCC Financing Statement in the Bureau of Conveyances of the State of Hawaii in Liber 12958 at 619, by which document First Venture perfected a security interest for $250,000.00 in all of the accounts, general intangibles and personal property of debtor.

3. On May 28, 1983, the Trustee herein held an auction sale of the equipment of debtor held on debtor's leasehold premises at Honolulu Airport, proceeds of said sale after deduction for costs of the sale were $48,433.51. The secured creditors have agreed that items not held at the Honolulu premises were not covered by the security agreement of Pioneer. The secured creditors have further agreed that with the exception of the cash proceeds from four (4) items, Pioneer holds a first secured interest in the proceeds. Orders have previously been entered regarding abandonment of these proceeds.

4. The Trustee is now holding, pursuant to the above $4,873.57 in proceeds from the

sale of four (4) items, said items being a white fuel truck, two (2) Toyota Forklifts, and a Dodge Van.

5. At the hearing on December 9, 1983, James G. Thompson, Senior Vice President for First Venture and the officer responsible for loans made to debtor, testified that funds were advanced to debtor specifically for the purchase of equipment. Mr. Thompson further testified that there was no specific written agreement that the funds were to be used for the purchase of the specific items of equipment, other than the general security interest as filed.

6. Jane Lynn Ginsburg, who was employed by debtor from 1977 through January 1983, first as receptionist, then as a billing and accounts-receivable clerk, then in the data processing section and from 1980 as director of the data processing section, testified that the advances made to debtor from First Venture enabled purchase of the four (4) items of equipment in question. In support of this testimony, Ms. Ginsburg explained that she was able to trace the funds advanced from First Federal, $150,000.00 of which was placed in a savings account at First Hawaiian Bank, and from which account funds were then transferred into debtor's checking account from which checks were issued to purchase the four (4) items in question. Ms. Ginsburg testified that she was able to trace through the records of both accounts the funds from First Venture to show that they were used for the purchase of the four (4) items. Ms. Ginsburg's testimony revealed that using either the FIFO (first in first out) or the LIFO (last in last out) method of accounting, the funds from First Venture were directly traceable to those used for checks cut on June 26, 1978 for the 1964 White Fueler from Seaflight, for two payments on June 22 and 27, 1978 toward purchase of the Dodge Van from M. Dyer, and on July 18, 1978, two checks to Service Motors for the two Toyota Forklifts.

## CONCLUSIONS OF LAW

1. The basic rule governing priorities of security interests, often stated as "first in time, first in right", is found in 490:9–312(5): "In all cases not governed by other rules ... priority between conflicting security interests in the same collateral shall be determined as follows: (a) in the order of filing if both are perfected by filing ...."

2. This basic rule is not without exceptions, and this Court is faced with determining if the instant situation is indeed one in which the basic priority rule gives way to the "second in time, first in right" rule involving purchase money security interests. First Venture claims that its security interest in the cash proceeds in question is a purchase money security interest in that the cash proceeds in question is a purchase money security interest which defeats the prior security interest of Pioneer pursuant to HRS 490:9–312(4):

A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral or its proceeds if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within ten days thereafter.

3. The definition of a purchase money security interest is found in HRS 490:9–107:

A security interest is a "purchase money security interest" to the extent that it is

. . . .

(b) Taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

4. The threshold question and the contested issue before the Court is whether the security interest held by First Venture is indeed a purchase money security interest given the definition found in HRS 490:9–107. To qualify as such, First Venture must show that the advances to debtor (1) enabled the debtor to acquire the collateral, and (2) that the funds advanced from First Venture were in fact the funds used to purchase the collateral.

5. The evidence presented at the hearing and undisputed by counsel established that the second part of this two-part test is met: the funds advanced to debtor from First Venture were in fact those funds used to purchase the four (4) items of equipment in question.

6. As to the "enabling" or "intent" test, it was the undisputed testimony of Mr. Thompson that the intended use of the funds advanced to debtor from First Venture pursuant to the security agreement in question was for debtor to use these funds for the purchase of equipment. Mr. Hall, the principal officer of debtor who dealt with Mr. Thompson on behalf of debtor during the period of time in question, was present in the courtroom and did not dispute Mr. Thompson's testimony.

7. Counsel for Pioneer contended that this testimony in itself was insufficient to meet the "enabling" requirement, arguing that there must be a specific contractual agreement as to the intended use of the advances, including a specific description of the collateral to be purchased, and that the general description of the collateral in the financing statement was insufficient to meet this test. No authority is cited for this proposition and the caselaw referred to by Pioneer apparently to support this contention was not relevant. The Court recognizes that in the best of all possible situations, the secured creditor would specifically identify the collateral to be purchased with the advances, but this falls short of requiring that the purchase money security interest fails for something less than this specific statement. As Professor Gilmore has stated, "The evident intent of paragraph (b) is to free the purchase-money concept from artificial limitations; rigid adherence to particular formalities in sequences should not be required." J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code Sec. 25–5 (West Publishing Co., 1972), quoting 2 G. Gilmore, Security Interests in Personal Property 782, (1965).

8. Lacking caselaw or statute requiring that the security instruments must identify the specific collateral to be purchased, this Court finds that the "enabling" requirement of HRS 490:9–107(b) is met by the testimony of Mr. Thompson.

9. Having established that the security interest of First Venture in the cash proceeds of the four (4) items of equipment is indeed a purchase money security interest, and there being no dispute that the requirements of HRS 490:9–312(4) are fulfilled, this Court thus holds that pursuant to HRS 490:9–312(4) and HRS 490:9–107, the security interest of First Venture in the cash proceeds from the sale of the four (4) items of equipment in question takes priority over Pioneer's prior conflicting security interest in all equipment of debtor.

An Order abandoning the $4,873.57 in cash proceeds of the sale of the equipment in question to First Venture will be signed upon presentment.