**WELCO INDUSTRIES, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 365–81C.**

United States Claims Court.

May 31, 1985.

Herbert Bass, Cincinnati, Ohio, for plaintiff. Schulzinger & Immerman, Cincinnati, Ohio, of counsel.

Helene M. Goldberg, Washington, D.C., with whom was Acting Asst. Atty. Gen., Richard K. Willard, for defendant. Stephen G. Anderson, Washington, D.C., of counsel.

## OPINION

WIESE, Judge.

This case comes before the court on the parties' cross-motions for summary judgment. The question at issue is whether the Government, through its progress payments to a contractor, obtains an interest in contract inventory that is paramount to the claim of an unpaid supplier who furnished goods for the contract subject to a reservation of title. Oral argument was heard on the matter at the conclusion of which the court entered a bench ruling in the Government's favor. The decision reached was that, upon the basis of progress payments, taken in conjunction with the contract's title vesting provisions, the Government obtains a perfected security interest which, on the particular facts of this case, commands priority over the interest reserved by the contract supplier. This opinion states the reasons for that decision in more detail.

## FACTS

Plaintiff, Welco Industries, Inc. (Welco), an Ohio corporation, agreed to furnish electric motors and compressors to Wedj, Inc. (Wedj), a Pennsylvania corporation, in connection with Wedj's performance of a Government contract for the manufacture of air conditioners for the United States Army Troop Support Command.

The agreement between the two companies included a memorandum of understanding, dated March 31, 1978, that had been executed in the presence of the Government's administrative contracting officer. Among other points, the memorandum of understanding recited that the contracting officer had "agreed to approve Government progress payments to Wedj Inc. for Welco material * * * immediately

on receipt at Wedj Inc."; a parallel provision recited Wedj's promise to pay Welco the full invoiced price of each shipment within 10 to 15 days of receipt of material. The memorandum also provided "that any Welco Industries, Inc. material received at Wedj Inc. remains Welco Industries, Inc. property until full payment is received."

Welco shipped the compressors and motors to Wedj and that company, in turn, took the value of these shipments into account in the progress payments that it requested and received from the Government. Wedj, however, did not pay Welco for all the shipments it received.

On September 13, 1978, Welco filed a petition for an *ex parte* writ of seizure and a complaint in replevin in the Court of Common Pleas for York County, Pennsylvania seeking return of the materials shipped to Wedj for which payment had not been received. The United States moved to intervene in this suit and sought the release and return of the goods by filing a stipulation for their discharge pursuant to 40 U.S.C. §§ 308–309 (1982)[1]. The motion of the Government was granted subject to the giving of a counterbond securing the value of the property to the rightful owner as later determined.

Thereafter, the suit was removed to the United States District Court for the Middle District of Pennsylvania; later the action was transferred to this court. Welco seeks recovery here of the unpaid value of the electric motors and compressors that were incorporated into the air conditioning units that Wedj delivered to the Government; the amount of the claim is $152,529.67.

## DISCUSSION

### A.

In pressing here its demand for payment, Welco relies on the fact that, in accordance with the memorandum of understanding,

shipments to Wedj were subject to a retention of title until full payment from that company was received. This arrangement, as Welco now describes it, "would be consistent with a lien being retained on the delivered property * * * either by operation of law in the sense of a purchase money mortgage, or consensual in nature having been created by agreement of the parties." Taken either way, Welco's point is that the United States acquired property impressed with an adverse ownership interest for whose value it now must pay.

The Government denies liability. Reliance is placed upon the progress payment clause that was incorporated by reference in Wedj's contract. That clause stated, in pertinent part, that "[i]mmediately, upon the date of this contract, title to all parts; materials; inventories; [and] work in process * * * acquired or produced by the Contractor and allocated or properly chargeable to this contract under sound and generally accepted accounting principles * * * shall forthwith vest in the Government". Defense Acquisition Regulations, 32 C.F.R. § 7–104.35(b), (d) (1979). The Government maintains that this contract language is applicable here inasmuch as its progress payments to Wedj encompassed the invoiced price of the Welco shipments; accordingly, the Government argues that it, rather than Welco, holds the superior interest in the Welco motors and compressors. Though the court agrees with the Government, the position requires refinement.

### B.

The decisional authority that shapes much of the outcome here is *Marine Midland Bank v. United States*, 231 Ct.Cl. 496, 687 F.2d 395 (1982), *cert. denied*, 460 U.S. 1037, 103 S.Ct. 1427, 75 L.Ed.2d 788 (1983). That case, like this one, involved competing demands to priority in inventory collateral of a Government contractor. On

---

**1.** The cited provisions, 40 U.S.C. §§ 308–309 (1982), provide a mechanism by which the United States may gain possession of property (in which it claims an interest) that was seized under authority of state law to secure the interest of a rival claimant, such release being conditioned upon the giving of a stipulation agreeing to a final judicial determination of the competing rights in the property.

the one hand was the claim of the plaintiff bank—it held a perfected security interest in all of the contractor's property (deriving from a so-called "floating lien" [2]) given to secure the contractor's guarantee of a debt owed the bank by a third party. On the other hand was the claim of the Government—it asserted ownership to the contractor's inventory by virtue of the progress payments it had made during contract performance and the acquisition of title that it claimed was the result of those payments under the contract's "title vesting" language.

In resolving the conflict, the court began its analysis with an examination of the nature of the property interest acquired by the United States. It said, in this connection, that the contract's reference to acquisition of "title" reflected outmoded usage. In its present setting, declared the court, "it is plain that ownership is not taken, but rather that the government takes a security interest in the contractor's inventory, to secure the funds loaned to the contractor through progress payments." Id. at 502, 687 F.2d at 399. The court likened the interest acquired by the Government to a lien, thus prompting the question as to which of the two competing non-possessory interests, the bank's or the Government's, should prevail.

In deciding this second point, the court recognized that it was free, absent congressional expression to the contrary, to adopt state law as the federal rule of decision. Nevertheless, it was concluded that the magnitude of federal procurement activity dictated the application of a single uniform rule.

With these two essential points decided, the court went on to announce the rule it would apply: "[t]he rule of decision we choose for this case is to make the government's security interest under its title vesting procedures paramount to the liens of general creditors." Id. at 511, 687 F.2d at

404. This result, as the court explained it, was akin to the modern practice of giving priority to purchase money interests. Thus, the Government was given a paramount interest to the extent that it had given value identified with specific property; it therefore prevailed over the bank's non-purchase money interest.

### C.

On the facts of this case, the question of which interest—the Government's or plaintiff's—must be given priority is much closer than that presented on the facts of *Marine Midland*. Whereas Marine Midland Bank's interest in the collateral secured a promise foreign to the performance of the Government contract (*i.e.,* the unrelated debt of a third party), the interest Welco asserts is based upon its delivery of goods specifically identified to the Government contract. To put it another way, in contrast to *Marine Midland*, both Welco's interest and that of the Government must be regarded as purchase money interests, and therefore, the Government's interest cannot be accorded priority based upon that ground, without more.

While the court in *Marine Midland* stated that its decision to give priority to the Government on the particular facts of that case "merely follow[ed] the modern practice of giving priority to purchase money interests", *id.* at 511, 687 F.2d at 404, it did not identify the source of that rule. Moreover, the statement in the opinion that "[t]he Government should be able to take out of the contractor the value that it has put in", *id.*, expresses a result no less consistent with the priority accorded a perfected purchase money with a rule granting the Government the benefit of an unrestricted priority. However, it need not be decided here which of these two standards should apply for it is plain that even under a federal rule that adopted the priorities

---

**2.** As the name implies, a floating lien is a non-possessory security interest in a changing or shifting type of collateral, an example being a security interest that attaches to a manufacturer's product from the raw material stage, through fabrication and ultimately to the proceeds received upon sale of the finished item.

set forth in state law as the basis for decision, Welco could not prevail.

There are several steps to that conclusion. First it is clear that, under the *Marine Midland* decision, the efficacy of the Government's security interest against rival liens was not made dependent upon perfection of that interest through recordation. That is apparent from the fact that the court itself foresaw a notice problem in its result saying, in this connection: "There is a slight potential for harm * * * when a general lender comes to a debtor after the government has made progress payments, because then the lender could be deceived that the value of the government's progress payments would be available to it as collateral." Id. at 511, n. 9, 687 F.2d at 904–05, n. 9. In recognizing this difficulty and, in saying at the same time that the prospective creditor's protection "would be to ask the debtor if it has any government contracts", *id.*, the court obviously had in mind that the government's security interest operate free of any formalized disclosure (*i.e.*, recording) requirements. In short, the security interest which the Government derives on the basis of its progress payments is one that is perfected simultaneously upon the extension of those payments to the contractor.

To say that the Government holds a perfected security interest arising from the fact of its progress payments is not to say, of course, that that interest automatically entitles it to prevail over all rival liens. To the contrary, under the Uniform Commercial Code, previously perfected purchase money security interests in the same collateral would not be defeated. U.C.C. § 9–312(3), (5) (1977).[3]

■ That then brings up the next point—the status of Welco's interest under state law. Initially, it is to be noted that under the Uniform Commercial Code, a seller's retention or reservation of title in goods shipped or delivered to a buyer is "limited in effect to a reservation of a security interest." U.C.C. § 2–401(1). Thus, under this provision, Welco's attempted reservation of title to protect against the buyer's failure to pay is reduced to the status of a security interest; as a matter of law it cannot go beyond that.

■ And not only would the Uniform Commercial Code limit Welco's right in delivered goods to a security interest, it would also require the perfection of that interest through the filing of a financing statement in order to obtain priority over a conflicting security interest in the same collateral. U.C.C. §§ 9–302, 9–312(3), (5). And therein lies Welco's problem: it never perfected its interest through filing. Had Welco done so, this would be a much different case. But having failed to do so, the Uniform Commercial Code relegates its interest to a subordinate position. U.C.C. § 9–301. The Government's interest in the collateral is paramount; further, since there is no excess value in that collateral beyond the amount of the Government's progress payments, it follows that Welco's claim must go unsatisfied.

It should be understood that the foregoing analysis is not intended to signal the court's adoption of state rules of priority as the basis of a federal standard. It may well be that the proper rule is one that calls for absolute federal priority. The point has not been argued and this case does not require that that issue be decided.

### CONCLUSION

For the reasons stated, defendant's motion for summary judgment is granted and plaintiff's motion for summary judgment is denied. The complaint shall be dismissed.

---

**3.** The provisions of the Uniform Commercial Code have been adopted both in Ohio, Welco's home state and the jurisdiction where the memorandum of understanding was executed, and Pennsylvania, the state of contract performance. The Ohio statutes are found in Ohio Rev.Code Ann. §§ 1301.02—1309.50 (Page 1979); the Pennsylvania statutes are contained in 13 Pa. Cons.Stat.Ann. §§ 1101–9507 (Purdon 1984). In 1978, the year in issue in this case, the Pennsylvania statutes were differently numbered; the relevant citation is Pa.Stat.Ann. tit. 12A §§ 1–101 to 9–507 (Purdon 1970).