**FIRST NATIONAL BANK OF GENEVA, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 280–86C.

United States Claims Court.

Oct. 2, 1987.

Laurence H. Lenz, Jr., Chicago, Ill., for plaintiff.

J. Keith Burt, Washington, D.C., with whom was Asst. Atty. Gen., Richard K. Willard, for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge:

This dispute comes before the court on the parties' cross-motions for summary judgement. Plaintiff claims that its perfected purchase money security interest in a government contractor's special tooling is superior to defendant's interest in the same property. Defendant asserts that it holds a title interest which vested and cut off any subsequent lien against defendant's property including plaintiff's interest, or in the alternative, an interest analogous to a purchase money security interest which is superior to plaintiff's interest.

## FACTS

The object of this litigation is the sale proceeds of a piece of equipment allegedly leased, then purchased by Denalco Corporation in performance of contract DAAE07–82–C–5361 awarded on November 24, 1981, by the United States through the Department of the Army. Pursuant to Armed Services Procurement Regulation 7–104.35(b), 32 C.F.R. § 7–104.35(b) (1981), the Denalco contract contained a clause for "Progress Payment for Small Business Concerns." This clause authorized defendant to pay a percentage of the contract price to Denalco from time to time to cover costs incurred in performance and completion of the contract. That clause contained a provision which vested "title" in defendant to all materials, inventory, special tooling, and certain other property acquired or produced by Denalco during and properly allocable to the contract.

On December 11, 1981, Denalco informed defendant that it needed special tooling to perform the contract and requested a draw of $444,500.00 under the progress payment clause. On December 15, 1981, Denalco supplemented its request by identifying, among other things, one piece of needed special tooling: the Mazak Micro Center, Model V–ISM, Serial No. 49,164. Sometime before the first progress payment was granted, Denalco sought and received a $550,000.00 loan from plaintiff, First National Bank of Geneva. The loan was guaranteed by the Small Business Administration and was additionally secured by an interest in all of Denalco's assets.

On December 22, 1981, Denalco entered into an agreement with Northbrook Leasing Corporation to lease the Mazak. That same day, Denalco, using a portion of the funds loaned it by plaintiff, issued a check for $100,000.00 to Shula, Inc., Northbrook's parent corporation, representing the initial payment on a sixty-one month lease. Denalco took immediate possession of the Mazak. One week after the payment to Shula, on December 29, 1981, Denalco received the first progress payment from defendant, in the amount of $400,500.00.

In April of 1982, Northbrook informed Denalco that it intended to sell the Mazak to Siegler Machinery Corporation. This necessitated a termination of the lease agreement. Siegler, in turn, offered to sell the Mazak to Denalco for $143,629.53. Northbrook refunded $80,000.00 of the initial lease payment on the Mazak to Denalco, and Denalco applied that refund as a downpayment to Siegler. Denalco later applied for, and on July 1, 1982, plaintiff approved, a second loan to Denalco in the amount of $64,000.00 for the specific purpose of permitting Denalco to pay the balance of the purchase price. To secure payment of the second loan, Denalco executed a security agreement to plaintiff. Plaintiff then filed a financing statement with the Illinois Secretary of State on July 8, 1982, perfecting its purchase money security interest in the Mazak. The actual amount of the purchase money security interest is $63,629.53, which is that portion of the $64,000 loan paid by Denalco to Siegler for the Mazak.[1]

On April 25, 1983, Denalco filed a petition for reorganization under Chapter 11 of the Federal Bankruptcy Code. The bankruptcy proceeding was changed to a Chapter 7 liquidation on September 9, 1983. Defendant terminated its contract with Denalco on December 2, 1983, and asserted title under the terms of the progress payments clause to all property acquired by Denalco during the period of the contract, including the Mazak. Plaintiff also claimed title to the Mazak to the extent of its perfected purchase money security interest.

By agreement, the parties sold the Mazak and placed the proceeds in escrow. By order of the bankruptcy court, the trustee in escrow paid the proceeds to defendant. The United States district court entered a Memorandum Opinion and Order vacating the bankruptcy court's order on the ground that the bankruptcy court lacked jurisdiction to resolve the dispute. *First Nat'l Bank v. Biallas (In re Denalco Corp.)*, 57 B.R. 392 (N.D.Ill.1986). This litigation followed. Jurisdiction here is premised upon 28 U.S.C. § 1491(a) (1982) and the agreement between plaintiff and defendant to place the proceeds of the sale of the Mazak in the escrow account pending judicial determination of the rightful owner of the funds.

## DISCUSSION

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. RUSCC 56(c). At issue is whether plaintiff's perfected purchase money security interest prevails over defendant's contractual "title" interest. The court is of the opinion that there are no genuine issues of material fact in dispute and that the case is

---

1. The facts, to this point, are taken from stipulations and supported by the documents filed by the parties with their respective motions and from oral argument. There is, however, in the record the referenced letter of December 15, 1981, from Denalco to defendant which states:

> To supplement our letter of December 11, 1981 we wish to submit the following information to support our request for progress payments against contract DAAE07–82–C–5361.
>
> \* \* \* \* \* \*
>
> b.) The special tooling has been purchased from Siegler Machinery and will be modified

Mazak Micro Center. Our purchase order is #6585 and delivery of the first machine is January 5, 1982.

The court discounts the veracity of this information. It could not be true and, even if so, would have no effect on the outcome of the case. The record clearly shows that use of the Mazak was obtained on December 22, 1981, from Northbrook, through its parent, Shula, using funds provided by plaintiff and that Siegler did not acquire an interest in the Mazak until several months later.

properly before the court for disposition on cross-motions for summary judgment.

■ At the outset, it should be understood that the following analysis is intended neither to signal the court's adoption of state rules as the federal rule of law, nor to witness the creation of new federal common law as the basis of a federal standard of priority.[2] Rather, the court applies the reasoning found in existing federal common law for the rule of decision. Particu-

larly, the court considers the law of *Welco Industries v. United States,* 8 Cl.Ct. 303 (1985), *aff'd mem.* 790 F.2d 90 (Fed.Cir. 1986), and *Marine Midland Bank v. United States,* 231 Ct.Cl. 496, 687 F.2d 395 (1982), *cert. denied,* 460 U.S. 1037, 103 S.Ct. 1427, 75 L.Ed.2d 788 (1983).[3]

■ Plaintiff claims that its purchase money security interest in the Mazak, perfected under state law, is superior to defendant's interest. Instead of challenging

2. In deciding what standard to apply, the court recognizes that "[i]n absence of an applicable Act of Congress it is for the federal courts to fashion the governing rule of law according to their own standards." *Clearfield Trust Co. v. United States,* 318 U.S. 363, 367, 63 S.Ct. 573, 575, 87 L.Ed. 838 (1943). Plaintiff urges the court to adopt state law as the federal rule of decision in the context of defaulting debtors "[b]ecause the state commercial codes 'furnish convenient solutions in no way inconsistent with adequate protection of the federal interest[s].'" *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 729, 99 S.Ct. 1448, 1459, 59 L.Ed.2d 711 (1979) (quoting *United States v. Standard Oil Co.,* 332 U.S. 301, 309, 67 S.Ct. 1604, 1609, 91 L.Ed. 2067 (1947)). Defendant argues that "one of the primary purposes of the extensive and detailed regulations for federal procurement [is] to promote standardization and uniformity throughout the federal system," *Marine Midland Bank v. United States,* 231 Ct. Cl. 496, 510, 687 F.2d 395, 404 (1982), *cert. denied,* 460 U.S. 1037, 103 S.Ct. 1427, 75 L.Ed.2d 788 (1983), and therefore federal common law should be adopted or created. Fundamental principles of commercial law form the substantive basis of both standards, so under some circumstances, a choice may not be necessary. The court's reading of *Marine Midland, Welco Industries v. United States,* 8 Cl. Ct. 303 (1985), *aff'd mem.* 790 F.2d 90 (Fed.Cir.1986), and state commercial law convinces it that basic principles of law common to both standards are dispositive of this case. The rule of decision here is in harmony with the U.C.C. and already enumerated federal common law.

3. The court's decision is based upon the reasoning of *Marine Midland* because "[a]ll published decisions of the United States Court of Claims are accepted as binding precedent for the United States Claims Court, unless and until modified by decisions of the United States Court of Appeals for the Federal Circuit or the United States Supreme Court." United States Claims Court General Order No. 1, October 1, 1982, *reprinted in* 1 Cl. Ct. XXI (1982). This court reads *Marine Midland* to confer, under a lien theory, a security interest in the government relative to progress payments being identified with specific property. Under the lien theory,

the matter is a priority analysis that weighs the competing superiority of lien interests. The analysis, however, under title theory is significantly different.

A respectable body of law criticizes the reasoning of *Marine Midland* and holds that, when, under a title vesting clause, a government contractor acquires property allocable to the contract or its completion, government obtains absolute title to the property and subsequent liens cannot be asserted against that property to defeat the government's interest, that is; the subsequent lien is not a cognizable interest. *U.S. v. Ansonia Brass and Copper Co.,* 218 U.S. 452, 31 S.Ct. 49, 54 L.Ed. 1107 (1910); *In re American Pouch Foods, Inc.,* 769 F.2d 1190 (7th Cir.1985), *cert. denied,* 475 U.S. 1082, 106 S.Ct. 1459, 89 L.Ed.2d 716 (1986); *In re Double H Prods.,* 462 F.2d 52 (3rd Cir.1972); *In re American Boiler Works,* 220 F.2d 319 (3rd Cir.1955); *Verco Indus. v. United States,* 27 B.R. 615 (Bankr.App. 9th Cir.1982); *United States v. Wincom,* 76 B.R. 1 (Bankr.D.Mass.1987); *United States v. Reynolds Mfg. Co.,* 68 B.R. 219 (Bankr.W.D.Pa.1986); *United States v. Economy Cab and Tool Co.,* 47 B.R. 708 (Bankr.D.Minn.1984). This line of title cases also generally accepts that a lien, in place before the government obtains title, remains cognizable. In such a case the aggrieved non-government creditor should seek relief under takings law. Under title theory, competing interests are not weighed against each other, the interests are merely acknowledged and enforced. Under the principle of law in these cases, this court would be persuaded instead to rule in favor of defendant and conclude that to the extent Denalco acquired the Mazak, defendant became title owner of the Mazak. Thereafter, plaintiff could not assert a lien against government property, notwithstanding the purchase money nature of plaintiff's interest.

As a court with nationwide jurisdiction, it is in the interest of public policy that the law be applied consistently. The court is uneasy with the thought that two plaintiffs with similar causes of action will be treated differently under the law merely because one litigates in the bankruptcy courts and one litigates in the United States Claims Court. This court would be inclined to adopt the reasoning of the title theory, but it is not in the position to do so.

plaintiff's perfected purchase money security interest, defendant maintains that it holds a superior interest pursuant to the contract's "title vesting" clause which precluded the attachment of plaintiff's interest to the acquired government property or pursuant to an interest analogous to a purchase money security interest.

### A. The December Mazak Transaction

Under the terms of the title vesting clause, defendant obtained "title" in property "acquired or produced by the Contractor and allocable or properly chargeable to this contract under sound and generally accepted accounting principles and practices . . . ." The effective operation of this clause, then, depends upon the acquisition of property properly allocable to the contract. Defendant maintained that it acquired a title interest in the Mazak as early as December 22, 1981, when plaintiff entered what defendant characterized as a lease-purchase agreement with Northbrook for the use of the Mazak and, in the alternative, because defendant about that time issued its progress payment intending to provide for the acquisition (purchase) of the Mazak.[4] With respect to the December transaction, and whether couched under title or lien theory, we cannot agree.

Courts recognize that leases are in fact intended as security when, under the circumstances of the particular case, the facts so indicate. Factual indicators include: building up of equitable interest in the property; the nature of lessor's business; sales tax; property or ownership tax; risk of loss; burdens of insurance; maintenance responsibilities; default provisions that favor lessor; rental payments approximating the purchase price; repossession by the owner at the conclusion of the lease; and others. In addition, it is well established that a lease is actually intended as security when the lessee through compliance with terms of the lease becomes or has the option to become the owner of the property by tendering no additional or nominal additional consideration. In this case the burden of production and persuasion was on defendant to prove that the agreement was not a lease. The court believes defendant has not carried this burden.

Defendant asserted that "Denalco had the option to purchase the Mazak at the expiration of the lease for $10,000.00." Yet, the defendant offered absolutely no proof in support of this assertion. To the contrary, the Denalco–Northbrook agreement did not provide that Denalco would become the owner of the Mazak or that Denalco had the opportunity to obtain or exercise an option to become the owner of the Mazak. To the contrary, the lease expressly stated on its face that "LESSEE HAS NO OPTION TO PURCHASE THE EQUIPMENT." The agreement went even further to define the nature of the parties' interests generated by complete compliance with the sixty-one month lease; the agreement stated that the "LESSEE HAS NO OPTION TO RENEW THE LEASE." The court believes that these express terms of the agreement tilt the scales to the side of a lease absent proof to the contrary.

Defendant also maintained that the initial lease payment and the monthly payments more clearly track an installment sale, but this stops short of the most important issue: ownership upon completion of the payment schedule. Again, the express terms of the agreement indicate that defendant's argument must fail. Denalco's possession and use of the Mazak was absolutely finite; the agreement called for a sixty-one month lease with no option to purchase or renew. The plain meaning of these terms indicates that under the terms of the agreement the Mazak was to return to the owner at the end of the lease. This is the antithesis of the transfer of ownership at the conclusion of a lease-purchase. Defendant has made no other attempt to establish other factors to persuade this court that the agreement was a lease-purchase rather than a lease. For these reasons the court determines that the 22 De-

---

**4.** Defendant relies upon *Welco,* where the court stated that "the security interest which the Government derives on the basis of its progress payments is one that is perfected simultaneously upon the extension of those payments to the contractor." *Welco,* 8 Cl. Ct. at 307.

cember 1981 agreement was a lease, not a lease-purchase.

This analysis leads the court to the unavoidable conclusion that as a lessee Denalco had no ownership rights in the Mazak prior to its purchase from Siegler. Denalco's only interest in the Mazak encompassed the right to possess and use the Mazak subject to the terms of the lease. The court cannot see how the title vesting clause may have operated to vest title or posit a purchase money-type interest in defendant by virtue of the December lease agreement which gave Denalco a possessory interest only in the Mazak.[5] *Cf. Rohweder v. Aberdeen Prod. Credit Ass'n*, 765 F.2d 109, 112 (8th Cir.1985); *Pontchartrain State Bank v. Poulson*, 684 F.2d 704, 707 (10th Cir.1982); *Ramco Steel, Inc. v. Kesler (In re Murdock Mach. and Eng. Co.)*, 620 F.2d 767 (10th Cir.1980); *Allen v. Cohen*, 310 F.2d 312 (2d Cir.1962); *Northwestern Bank v. First Virginia Bank*, 585 F.Supp. 425, 428–29 (W.D.Va.1984); Leary, *The Procrustean Bed of Finance Leasing*, 56 N.Y.U. L.Rev. 1061, 1079–86 (1981). Defendant certainly could not take from Denalco an interest which Denalco did not have. *Cf. In re Murdock*, 620 F.2d at 773–75 (title to the property in dispute never transferred to government because third party never transferred title to government contractor).

### B. *The Mazak Purchase*

Conversely, there is no doubt that Denalco acquired total ownership of the Mazak by purchase in July of 1982. It was at the time of the purchase transactions that defendant could have obtained a security interest in the Mazak pursuant to the title vesting clause. Yet, even then, the nature of the interest obtained by defendant remains undefined because it is a function of progress payments to the contractor being associated with the acquisition of specific property. Defendant contends that because it had advanced progress payments for the Mazak in December, and Denalco leased and then purchased the Mazak that "title" vested in defendant. Defendant

also contended that this interest was a special lien analogous to a purchase money interest. In support of its lien assertion, defendant cites *Marine Midland Bank v. United States*, 231 Ct.Cl. 496, 687 F.2d 395 (1982), *cert. denied*, 460 U.S. 1037, 103 S.Ct. 1427, 75 L.Ed.2d 788 (1983).

The court in *Marine Midland* held that the use of the term "title" in the title vesting clause was outmoded and misleading. "Full title, in the plain sense, certainly is not meant," *id.* at 509, 687 F.2d at 403, but the "government should be able to take out of the [contract] the value that it has put in, if that value is identified with specific property." *Id.* at 511, 687 F.2d at 404. Though the exact nature of the government's interest remained unnamed, the *Marine Midland* court held that the government's interest was one "closely analogous" to a purchase money interest, though something less than "full title," and it prevailed over the interest of a general creditor on an unrelated debt. This doctrine was developed further in *Welco Industries v. United States*, 8 Cl.Ct. 303 (1985), *aff'd mem.* 790 F.2d 90 (Fed.Cir. 1986), a case involving a dispute over claims to a contractor's inventory. In that case, the government acquired an interest in the inventory by issuing the progress payments with which the specific property was purchased. The court found that the government's resulting interest under the title vesting clause was superior to a supplier's unperfected interest, "to the extent that [the government] had given value identified with specific property." *Welco*, 8 Cl.Ct. at 306.

Neither *Marine Midland* nor *Welco* reached the issue of the priority of the government's "title" interest over a perfected purchase money security interest. In *Marine Midland*, the court stated that the "government's security interest under its title vesting procedures [is] paramount to the liens of *general creditors*." *Marine Midland*, 231 Ct.Cl. at 511, 687 F.2d at 404 (emphasis added). In *Welco*, the court stated that Welco had "never perfected its interest through filing. Had Welco done

---

**5.** Plaintiff abandoned its rights to use or posses-

sion upon the consensual sale of the Mazak.

so, this would be a much different case." *Welco,* 8 Cl.Ct. at 307. That "different" case is now before the court; defendant acknowledged that plaintiff has a properly perfected purchase money security interest. The court believes, however, that the facts of this case do not require the court to take that next step in this area of the law. This case may be resolved on a much more fundamental plane. Therefore, although not controlling on their facts, *Marine Midland* and *Welco* suggest principles of law by which this case may be resolved under the lien theory of *Marine Midland.*

The nature of the defendant's interest depends upon its entitlement to take out of the contract the value it has put in. *Marine Midland,* 231 Ct.Cl. at 511, 687 F.2d at 404–05; *Welco,* 8 Cl.Ct. at 306. Defendant claims that as in *Marine Midland* and *Welco,* it·has an interest analogous to a purchase money security interest. We must, then, test that interest to see if it is analogous to a purchase money security interest.

The U.C.C. states that a lender may acquire a purchase money interest in property to the extent that it "gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used." U.C.C. § 9–107. Some courts have been quite explicit in holding that the "in fact so used" standard of U.C.C. § 9–107 be interpreted strictly, that there be "a one-to-one relationship between the debt and the collateral" before a lender holds a purchase money security interest. *Southtrust Bank v. Borg–Warner Acceptance Corp.,* 760 F.2d 1240, 1243, *reh. denied,* 774 F.2d 1179 (11th Cir.1985). *See also Schneider v. Fidelity Nat'l Bank (In re Schneider),* 37 B.R. 747 (N.D.Ga.1984) (purchase money nature of creditor's interest depends on actual use of credited funds for intended purpose), *Fickey v. Bank of LaFayette,* 23 B.R. 586 (E.D.Tenn.1982) (interest is purchase money interest to the extent that the collateral secures a debt

incurred to enable the debtor to purchase the collateral); *but see In re Island Airlines Hawaii, Inc.,* 39 B.R. 558 (D. Hawaii 1984) (no identification of specific collateral purchased with intended advances is necessary). This court believes that this is what is meant by defendant's entitlement to take out of the contract the value that it has put in, so long as the value is identified with specific property. *Marine Midland,* 231 Ct.Cl. at 511, *Welco,* 8 Cl.Ct. at 306; *see* U.C.C. § 9–107 comment 1 (the advances enable the debtor to buy the collateral and the debtor "uses the money for that purpose"). This then becomes a major issue before the court. Did defendant put anything of value into the contract and was the value identified with specific property as defined in the progress payments clause?

It is undisputed that defendant put, at least, $400,500.00 into the Denalco contract. The court turns, therefore, to the question of whether the monies were identified with specific property. Defendant claims that it issued a progress payment to Denalco pursuant to its letters of December 11 and 15, 1981, specifically requesting funds for the Mazak, among other things. Defendant argued that it intended to fund Denalco's use of the Mazak, and that at least a portion of the progress payments were thereby specifically identified to the property in dispute. Yet, Denalco did not acquire the Mazak at that time in a manner that would grant to defendant an interest under the terms of the contract or under lien theory. Defendant did put value into the contract but the value was not identified with specific property; defendant did not refute that plaintiff's funds exclusively were, in fact, used not only for the initial lease payment, and consequently for the subsequent downpayment for purchase, of the Mazak, but also for the balance of the Mazak purchase in July of 1982. Plaintiff's, not defendant's, funds were used on July 1, 1982, to purchase the Mazak.[6] Un-

---

**6.** At no time or in no manner has defendant asserted or established that progress payments made to Denalco were used to pay off the $550,-000.00 loan from First National in December. This estops defendant from claiming under a

lien theory an $80,000.00 interest in the Mazak which perhaps it could have asserted had it established the use of progress payments to pay off First National. This is, however, a matter not before the court on these motions for sum-

der this analysis defendant put nothing into the Mazak.

The court resolves this case not by declaring that plaintiff's purchase money security interest, perfected under state law, is superior to defendant's "title" interest, but by a much more fundamental finding; on the facts present here, defendant's interest never arose to an interest analogous to a purchase money security interest as outlined in *Marine Midland* and *Welco* because defendant put no value into the Mazak. Plaintiff's perfected purchase money security interest stands alone and, therefore, subordinate to no other interest to the extent of the $63,629.53 security interest. In this case, plaintiff's interest is, therefore, superior under the general principles related to "title" interest set forth in the contract and, as defined in *Marine Midland* and *Welco.*

## CONCLUSION

Based on this analysis, the court grants plaintiff's motion for summary judgment and denies defendant's motion for summary judgment. The Clerk is directed to enter judgment for the plaintiff in the amount of $63,629.53. No costs.

mary judgment because defendant has neither made such an argument nor denied the exclusive use of plaintiff's funds for the lease and purchase of the Mazak.